## KARL HOFFMAN v. STATE.

No. A-3936.    Opinion Filed Aug. 18, 1923.
(218 Pac. 176.)

(Syllabus.)

1.    Larceny—Acts of Clerk in Secreting Packages in Store and Removing in One Parcel as One Transaction—Grand Larceny. Where a clerk in charge of merchandise takes different articles from stock and wraps them in parcels and secretes them in the store, with the intent of appropriating them to his own use, and finally gathers the different parcels together and places them in one parcel and carries them from the store, such appropriation may be considered as one transaction, supporting a charge of grand larceny where the aggregate value of the articles taken exceeds $20.

2.    Larceny—Proof of Value Insufficient to Support Verdict of Grand Larceny. Where the only proof of value, supporting a charge of grand larceny, of a multitude of small articles is indefinite, and in the nature of mere estimates of value by the prosecuting witness, and the aggregate amount of such estimates is $21.05, the proof is insufficient to support a verdict of grand larceny

3.    Larceny—Evidence of Value of Articles Stolen at Other Places Admissible. If the evidence of value at the place of the larceny of common articles of merchandise is not clear and explicit, evidence of their value at other places sufficiently near and in like situation may be received as will reasonably tend to establish a fair value of the articles taken.

4.    Evidence—Price Lists of Wholesale Dealers Admissible to Determine Value of Articles Stolen. As a general rule, current price lists and catalogues from wholesale dealers may be used to establish the cost of articles sold to retail dealers; and where the selling price by the retailer is cost plus a percentage of that cost as profit, such cost price as shown in lists and catalogues may be used to aid in determining the retail market value of the articles.

Appeal from the District Court, Mayes County; A. C. Brewster, Judge.

Karl Hoffman was convicted of grand larceny, and he appeals. Reversed and remanded.

John C. Graves, for plaintiff in error.

The Attorney General, for the State.

BESSEY, J.  Karl Hoffman, plaintiff in error, here designated the defendant, was, by information filed in the district court of Mayes county charged with the larceny of certain tools and articles of hardware taken from the hardware store of H. C. Henson at Locust Grove on March 24, 1920. At the trial, September 21, 1921, by a verdict of the jury, defendant was found guilty of grand larceny, and his punishment assessed at confinement in the state penitentiary for a period of eight months.  Subsequently, the court pronounced judgment upon the verdict, directing that the defendant be confined in the reformatory at Granite for a term of eight months.  From this judgment defendant appeals.

The information charges, and specifically describes, the taking of 41 different tools and pieces of hardware, ranging in value from 15 cents to $2.75, and alleged to be of the aggregate value of $22.30.

There are really but two questions involved in this appeal: First, whether the taking of these several articles was a series of petty larcenies, or whether it constituted but one transaction; second, whether the aggregate value of the articles taken exceeded $20.

The defendant had for some months been employed as a clerk and general helper in the store of H. C. Henson at Locust Grove.  Defendant admits that, from time to time during the period of his employment, he took from the stock of hardware belonging to Mr. Henson, the tools and articles described in the information, wrapping them in different parcels and placing them in different parts of the store in hiding; that finally all of these parcels were gathered together and put in one parcel, taken to his lodging place and put into a suitcase belonging to defendant.  Defendant's

employer, Henson, suspected that the defendant might be purloining some of his goods and discharged him from his employ. While defendant was on the way to the train with his suitcase, to go to his home in a neighboring town, Henson caused the defendant to be arrested, and the articles in controversy were seized by the officers and returned to Henson, who placed them back in stock in his store.

From the foregoing circumstances and some other testimony appearing in the record, we think that the taking of these several tools and articles constituted but one transaction, so that if the value of the stolen articles aggregated more than $20, the verdict of grand larceny was supported by the evidence. 17 R. C. L. 6. Woods v. People, 222 Ill. 293, 78 N. E. 607, 7 L. R. A. (N. S.) 520, 113 Am. St. Rep. 415, 6 Ann. Cas. 736.

Section 2104, Comp. Stat. 1921, provides that grand larceny is committed in either of the following cases: First. When the property taken is of value exceeding $20. * * *

In an early case, Filson v. Territory, 11 Okla. 351, 67 Pac. 473, Chief Justice Burford, speaking for the court, said: "The reasonable market value * * * is the true criterion for determining the grade of larceny." It has been held in other jurisdictions that the word "value," when used in a statute relating to larceny, is equivalent to the term "market value." It follows, then, that the expression "market value" relates to buying and selling, so that another equivalent expression might be said to be "reasonable selling price." Vol. 3 Words & Phrases, Second Series, pp. 300-302; vol. 4 Words & Phrases, Second Series, "Value"; 17 R. C. L. "Larceny," § 3.

The record discloses that H. C. Henson was the only person engaged in the hardware business in Locust Grove and that he handled hardware purchased from the Simmons Hardware Company exclusively. Since Mr. Henson was the only person handling hardware in this town, does it necessarily follow that the selling price established by him was the true and only correct criterion of the "value" of the different articles taken?

The value of the several articles taken, as fixed by the prosecuting witness, the only witness who testified as to their value, was rather vague and indefinite. In a general way he testified that the values as fixed by him were the original cost prices on the various articles, with from 33 1-3 to 35 per cent. added for profit and overhead expense, plus the transportation—these aggregates making his selling price on the various articles. It appears that many of the values so fixed by this witness were mere estimates, as distinguished from positive statements of value, as will be seen from the following excerpts from the record:

"Q. Now, Mr. Henson, I notice you have a 5-32 drill here; what is that worth? A. Well, from memory, probably 25 cents at that time.

"Q. A 6-32 twist drill; what was that worth at that time? A. Probably five cents more.

"Q. Now, the 7-32 twist drill, how much was that? A. Well, probably 30 or 35 cents.

"Q. Well, which one do you say—30 or 35? A. Well, I would say 35 cents.

"Q. The 8-32? A. About the same price.

"Q. The 9-32 twist drill? A. Why, that was probably worth 40 cents.

"Q. The 10-32 twist drill? A. About the same price.

"Q. 11-32 twist drill? A. About 45 cents.

"Q. 12-32 twist drill? A. About the same price.

"Q. 13-32 twist drill? A. About 45 cents.

"Q. 14-32 twist drill? A. About the same.

"Q. 15-32 twist drill? A. About 50 cents, I would say.

"Q. 16-32? A. About 55.

"Q. Two nail sets, what were they worth? A. About 15 cents apiece.

"Q. One screwdriver? A. 35 or 40 cents. I think there is a difference in the size of the screwdrivers. About 5 cents difference in the selling price. About 35 or 40 cents, I think, if I remember right.

"Q. How many screwdrivers, did you say? A. Two screwdrivers and one screw bit.

"Q. This is a screw drive bit, I guess. A. About 15 or 20 cents.

"Q. Which would you say? A. About 20 cents.

"Q. One B. & C. adjustable wrench? A. About a $1.50, I think.

"Q. One No. 8 pipe wrench? A. A $1.25, I expect.

"Q. One No. 10 core monkey wrench, what was it worth? A. A $1 anyway.

"Q. How? A. A $1 I would judge, anyway, at that time.

"Q. One nut plier? A. About 75 cents.

"Q. One adjustable plier? A. About 35 cents.

"Q. One K Pean hammer? A. About a $1.25 is my memory.

"Q. Two spools soft wire? A. About 10 cents a spool."

At the conclusion of this witness' testimony it was found that the aggregate value, or estimate of value, as the case

may be, amounted to $21.05. From this it will be seen that there was no absolute proof that the value of the property taken exceeded $20. The use of the words and expressions, "probably," "I would say," "about the same," "probably worth," "I would judge," "according to my memory," and like terms applied to the values fixed by this witness, indicates that the witness himself was not attempting to testify in positive terms. These estimates of value fall short of establishing as a proved fact that the aggregate value of the goods taken exceeded $20.

It was claimed in this connection by this defendant, and defendant offered to show by other witnesses, that the value of the several articles was fixed by Henson at from 50 to 90 per cent. above cost and carriage, and that the values as determined by him were higher than the selling price of like articles in surrounding towns, as Pryor, Wagoner, and Muskogee. Counsel for defendant attempted in various ways to make such proof, and his several proffers were by the court refused. After much argument the court seems to have finally taken the position that the defendant should be limited to proof of the selling price of these several articles in Locust Grove, and be confined to the prices on the products of the Simmons Hardware Company, and that current catalogues of the Simmons and other hardware companies were inadmissible to show value. On this point we quote portions only of the record:

"Q. From what you learned from inquiring from merchants and from your experience in the store of Henson's at Locust Grove, and the experience you have had in hardware stores since that time, I will ask you if you are acquainted with what was the reasonable market value of the articles taken by you, at the time they were taken. I am asking you if you now know what the reasonable market value of them was at that time? A. Well, I don't know that I can say just exactly what it was, but somewhere near it.

"Q. What experience have you had in the hardware business from the time of taking it, up to the present? A. Well, I am working in a hardware store now.

"Q. How long have you been working there? A. At this place I have been working since the 10th of February.

"Q. Before that time what did you do? A. Before I worked at Locust Grove?

"Q. No, before you worked in that store? A. Well, I worked for Lawrence Price some at Wagoner.

"Q. What examination have you made, if any, of hardware catalogues for the year 1919 to determine the market value of hardware?

"By Mr. Nicklin: Object as incompetent, irrelevant and immaterial.

"By the court: Yes, the witness says—one witness testified that a catalogue is no basis.

"By Mr. Graves: Yes, but unfortunately—

"By the Court: And the court, I think, would not be bound by catalogues, unless it be shown that they were correct at the time.

"By Mr. Graves: The courts have held that you will be permitted to use a catalogue, and that it is good evidence, and as to whether or not it was a safe basis from which to determine is a question of fact for the jury, and not for a witness on the stand to decide.

"By the Court: But this witness says it is not correct, so you could not use it. Your own witness, Mr. Henson, you cross-examined him on that, and he said it was not correct.

"By Mr. Graves: He wasn't my witness.

"By the Court: You made him your witness when you asked him your question. Rather the testimony is, whether you made him your witness or not, that is what the testimony is.

"By Mr. Graves: Would your Honor hold I wouldn't be permitted to show a statement contrary to one made by the witness on cross-examination?

"By the Court: Yes, you would have a right to show that. His testimony is the only testimony on that point, as I remember.

"By Mr. Graves: But there will be more testimony.

"By the Court: Well, I can't presume that his testimony is incorrect. I don't know. Objection is sustained. Gentlemen, I don't think there is any use to try to prove any market value outside of Locust Grove neighborhood and community, unless it be shown that there is a uniform price in Locust Grove, Pryor, Choteau, Muskogee, and all of the surrounding towns. I suppose that would be the rule. The rule as laid down by our Supreme Court says the market value, the value of the article, is the reasonable market value in the community and at the time. There might be a different value in Muskogee and at Locust Grove. There might be a different value from Pryor to Locust Grove, I don't know. The court don't know and the court can't assume they all have the same values. First, before I think this evidence would be competent, you must show the value of these articles are identical, both at Muskogee and Locust Grove, before you introduce a Muskogee value. Same thing as to Pryor and Choteau. That is the rule of law. You will have to abide by it, gentlemen. This is all incompetent, and the court will so hold, and counsel may offer to show all the market values of Choteau, Pryor, Muskogee, and Wagoner, and the court will consider it as offered, and will deny the offer unless it is first shown these articles—the prices of them as established at Locust Grove, if established, is the same as the values in other towns. Just as well to rule on it now, gentlemen, no use to fool along with it.

"By Mr. Graves: Will Your Honor permit me to withdraw this witness for the present, and offer evidence along that line, in order to meet this ruling?

"By the Court: Yes, sir."

A witness, Walter Hairston, testified that he was a hardware merchant at Pryor, a town 16 miles distant from Locust Grove, and that he was familiar with the selling price of hardware, including hardware bought from Simmons, Wyeth, Hibbard, Bartel & Spencer, Blish, Mize & Silliman, Shapleigh, and other hardware companies, and that there was little difference in the price of the articles sold by these various companies. He also testified that the hardware merchants at Pryor competed with Henson at Locust Grove in the territory intervening, and that the price of hardware at Locust Grove and Pryor should be about the same, but that he had no positive knowledge of the price of hardware in Locust Grove, or the immediate neighborhood of Locust Grove. Thereafter this witness was asked:

"Q. Mr. Witness, you may state whether or not you were familiar with the market values of articles as mentioned in the information, on the 24th of March, 1919, in and around the town of Pryor, Oklahoma? A. Yes, sir.

"By Mr. Nicklin: Objected to, Your Honor.

"By the Court: Sustained.

"By Mr. Nicklin: Ask that the answer be stricken.

"By the Court: Now, there isn't any use to go into that, Mr. Graves. I think you have covered that from all angles. This witness says he does not know the reasonable market value of these goods in Locust Grove in 1919, and he doesn't handle the Simmons, if these are Simmons, and he doesn't know the uniform value.

*   *   *

"Q. Mr. Witness, is your knowledge of values of hardware such that you can say whether or not the market value of the articles mentioned in the information would be the same in the town of Pryor—in the town of Locust Grove, Oklahoma, as in the town of Pryor?

"By Mr. Nicklin: Objected to because the witness has answered that question at least once or twice.

"By the Court: Overruled.

"A. Well, they ought to be close, not very much difference in price between Pryor and Locust Grove.

"By Mr. Nicklin: Object to that and ask that the answer be stricken as not responsive to the question.

"By the Court: Gentlemen of the jury, this answer of the witness is stricken and you should not consider it. The court holds that the market value at the time and place must be at Locust Grove, unless it is first shown that the witness himself knows that there is a uniform value at Pryor and Locust Grove, and also, this answer to the question is not responsive to the question."

We think the restrictions imposed by the court, touching the introduction of evidence as to the value of the articles taken, were too narrow, and that since it was a close question of fact as to whether the amounts in the aggregate exceeded $20, the exclusion of some of the evidence proffered was prejudicial.

Suppose the merchandise alleged to have been stolen had been diamonds or Liberty Bonds. Could it be said that their value would have to be the selling price of such property in Locust Grove, a place where there had never been competitive selling of such property? The rule so strictly construed would in many instances practically preclude a defendant from making proof of the value of many things. From the very nature of the situation, such proof of the value of many things in Locust Grove would be impossible. Here the articles taken for the most part consisted of screwdrivers, drill bits, hack saws, and various kinds of wrenches, things found in all hardware stores everywhere. We cannot assume, without proof, that a screwdriver, or a drill, bit or

a wrench sold by the Simmons Hardware Company is better and more valuable than those sold by some one or more of the other wholesale hardware dealers. There are things, on the other hand, that would have no market value in the places where such things might be taken—for instance, bathing suits on the top of Pike's Peak, or snowshoes in Locust Grove. Under such circumstances, defendants must of necessity resort to other means to ascertain value. If the evidence of value at the place of the larceny is not clear and explicit, such evidence of value at other places sufficiently near and in like situation may be received as will reasonably tend to establish a fair value.

We see no reason why the rules to establish value in civil cases would not apply as well in criminal cases. In a case decided by the Supreme Court of Kansas, it was held that the market price of stock cattle at Garden City, Kan., was governed largely by the market price at Kansas City, Mo., and that the best evidence of value of which the case is susceptible should be admitted. See text and reason cited in 22 Corpus Juris, "Evidence," §§ 147-153. Evans v. Moseley, 84 Kan. 322, 114 Pac. 374, 50 L. R. A. (N. S.) 889.

Considering the uncertain proof of value by the prosecuting witness, sound reason would indicate that the defendant should have been permitted to make proof of the value of these articles by showing the price merchants in surrounding towns received for tools and articles of the same character, and by proof of quotations of prices in the current catalogues and price lists. Such proof, it seems to us, would be of greater probative force than the indefinite statements and estimates of value made by the person aggrieved.

We are persuaded that the evidence of value on the part of the state was insufficient, and that the defendant was not

given a fair opportunity to show, if he could, that the value of the property taken was in fact less than $20. The judgment of the trial court is therefore reversed, and the cause remanded.

MATSON, P. J., concurs; DOYLE, J., absent and not participating.