Randolph JOHNSON and Richard Wilson, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12460.

Criminal Court of Appeals of Oklahoma.
July 17, 1957.

Harold McArthur, Tulsa, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Randolph Johnson and Richard Wilson were jointly charged by information filed in the district court of Tulsa County with grand larceny, were tried before a jury and convicted but the jury being unable to agree upon the amount of punishment, left that to the court, who ordered and adjudged that Randolph Johnson be imprisoned in the State Penitentiary at McAlester at hard labor for the period of eighteen months and pay costs taxed at $75.03; and that the defendant Richard Wilson be imprisoned in the State Penitentiary at McAlester for one year, and pay costs taxed at $75.03.

It was charged in the information:

"Randolph Johnson and Richard Wilson on the 2nd day of April, A.D. 1956, in Tulsa County, State of Oklahoma and within the jurisdiction of this court, did unlawfully, stealthily, feloniously and conjointly, while acting in concert each with the other, take, steal and carry away, without the consent of the owner thereof, certain personal property, to-wit: 14 cases of Vigo Dog Food of the value of $61.60 in good and lawful money of the United States of America, the personal property of Pedrick Laboratories, Inc., with the unlawful and felonious intent then and there upon the part of the said defendants, and each of them, to deprive the owner thereof permanently and to convert the same to their own use and benefit, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State."

The vital point on appeal is whether the court erred in giving Instruction No. 6 and failing to give requested Instruction No. 1, submitted by defendant, or a similar instruction.

Instruction No. 6 complained of reads:

"You are instructed that where theft of property by the same person or persons from the same owner is committed on different occasions and by separate

takings, but the separate takings were part of a plan or scheme and a continuing impulse or purpose to steal from said owner and resulted from a single criminal intent or impulse and that the value of the property taken in the aggregate exceeds the value of $20, then in such event the said takings constitute the crime of grand larceny.

"On the other hand, if you fail so to find beyond a reasonable doubt and if you find that the takings were committed on different occasions, without a plan or scheme and a continuing impulse or purpose, to take more than was taken at each separate taking, and that the property taken at any one time did not exceed the value of $20, then and in such event such taking would constitute petit larceny.

"Should you find that the defendants are not guilty of grand larceny, as hereinbefore defined, but believe that on an occasion as alleged in the information they did steal property from the said Pedrick Laboratories, Inc., of the value less than $20, you will find the defendants guilty of petit larceny."

Defendants' requested instruction reads:

"No. 1. You are instructed, ladies and gentlemen of the jury, that where property was taken on a number of different occasions, each separate taking constituted a separate and distinct offense and that the defendants cannot be convicted of grand larceny unless you are satisfied beyond a reasonable doubt that the property taken on any one of the specific or different occasions exceeded in value the sum of $20, and unless you do so find that the property exceeded the value on an occasion the sum of $20 in value then your verdict in this case should be guilty of petit larceny if you find beyond a reasonable doubt that the defendants and each of them did take the property of the said Pedrick Laboratories for their own use and benefit and that the taking was wilful and without the authority of the said Pedrick Laboratories.

"Refused and defendants except."

■ The trial court failed to define "misdemeanor", and that was error.

The State in making out its case called as a witness one Leonard Revels, an accomplice of the defendants. He was employed at the Pedrick Laboratories as a butcher, and the defendant Johnson was a janitor, and had the use of a dump truck for hauling trash, refuse, broken shipping boxes, cans, etc. Defendant Wilson was a butcher. The employer company canned cat and dog food.

Revels testified that on April 2, 1956 around 12 o'clock noon he saw a truck back up to a dock; that he observed Johnson on the truck and Wilson on the dock and that Wilson was handing cases of Vigo dog food to Johnson, who placed them in the truck. He said ten or more cases were so placed in the truck. Witness said that at the time he observed the entrucking of the dog food that he was in a little house back of the dock where they butchered animals, cleaning the floor.

Witness said that on the evening of April 2, 1956, Randolph Johnson, discovering that witness had seen the transaction in question, came to him and: "told me I didn't see anything, told me, no; it wasn't none of my business. He asked me did I know where I could sell some of it. I told him, 'No', I would try to find out."

The outcome was that Revels helped Johnson dispose of twenty cases of Vigo. They got $3 a case for part of it, and $3.25 per case for some. They got the Vigo from the enclosed porch of defendant Wilson, and Revels and Johnson split the proceeds evenly from the sales made. He said that Wilson got off from work at noon and would drive to the dump grounds where the dog food would be transferred from the truck to Wilson's car, and taken for storage on his porch.

Michael Z. Pedrick testified that the defendants had worked for him; that his firm had been missing dog food and that a Mr. Hall, grocer of Sand Springs, had 'phoned him about defendants trying to sell him

Vigo dog food. Witness said that he got $4.40 per case for horse and beef; $4.13 per case for Vigo cat food, and $7.90 per case for Vigo 100. That after the conversation with grocer Hall he went with officers to defendant Wilson's home and found fourteen cases of his dog food on defendant's enclosed porch.

On crosss-examination witness said that after Hall telephoned him that he called in Randolph Johnson and Revels and drove them to the Hall grocery, and that he went in and picked up a carton of cigarettes. Back at his office he questioned Johnson and Revels separately and Johnson denied knowing anything about the stolen property, but Revels confessed to everything.

Robert D. Sims identified a signed confession from defendant Wilson as to his part in the theft of the dog foods. He admitted keeping the dog food, but claimed it was an accommodation for Randolph Johnson, who was his brother-in-law, and that he did not get any of the money from the sale.

■ Defendants interposed a demurrer at the close of the State's evidence. We conclude, however, that the evidence was sufficient to withstand the demurrer for the reason that there was evidence to corroborate the testimony of Revels that tended to connect defendants with the commission of the crime charged so as to meet the requirements of 22 O.S.1951 § 742.

There was no common law rule forbidding a conviction upon the uncorroborated testimony of an accomplice. 1 R.C.L. 166. The Federal courts and a number of state courts do not make this requirement, but by reason of our statutory requirement, supra, corroboration is required in this jurisdiction.

But there was no evidence to corroborate that portion of Revels' testimony to the effect that on April 2, 1956, the defendants loaded ten cases of dog food on the dump truck driven by Johnson. The question arises, then, as to whether or not it is necessary that Revels' testimony as to this material fact be corroborated.

The general rule is stated in 22 C.J.S. Criminal Law § 812b–1, p. 1396, as follows:

"While corroboration must be as to some material fact which will strengthen the testimony of the accomplice, it is not necessary that the accomplice should be corroborated with respect to every material fact as to which he testifies, nor that corroboration should extend to all the elements of the offense, for such a requirement would in effect deny to the testimony of the accomplice any value at all. If he is corroborated as to some material fact or facts tending to connect accused with the crime, this is sufficient to authorize an inference by the jury that he has testified truly even with respect to matters as to which he has not been corroborated, and thus sustain a conviction."

In his opening statement counsel admitted that the defendants had taken the dog food from the Pedrick Laboratories, Inc., but contended that only two or three cases had been taken at any one time, and hence each taking was a separate offense, and that three cases of dog food would be of value less than $20, and hence the offense would amount only to a misdemeanor.

The defendant Randolph Johnson testified in part as follows:

"A. Well, as you know, I drove a dump truck and I would load my trash and I would back up to the warehouse and in the warehouse that I did have there, well, occasionally they had empty boxes that had been dropped and some of them were busted, some split and I would load my trash on, then I would back up to the back of the warehouse and I would put sometimes two cases, sometimes three cases on, and in between I would be putting empty boxes which had been broken or crushed or bent up, something like that, and throw them on, then I would put my cover over my truck, go to the dump and dump it. Now, I did that twice; so I spoke to my brother in law and I asked him could he meet me at the dump and . ..

I designated the place to meet me and he said he would.

"Q. That was Richard Wilson? A. Yes, and so the next day he said he would help me, he got off at 12, so I told him when he got off I would be around to the warehouse. He came around to the warehouse and I put on two cases and he put on one. During the process of putting the cases on, Leonard Revels was out in the out-house, where he carried out his offal and things and he saw us when he was putting those cases on, when he came back out again I started putting empty boxes on, busted and everything, and he saw us putting those on and after then I pulled my canvass back down on my truck, Richard Wilson goes out to his car, meets me, puts three cases in his turtleback of his car, goes on and I goes on and dump the trash.

"Q. In other words, Wilson, his time was up at the plant? A. Yes.

"Q. But you worked later on in the afternoon, is that correct? A. That is correct.

"Q. Was it after that on each occasion that Wilson would carry the stuff out in his car? A. Yes, it was always out there after 12 o'clock, after he would get off from work.

"Q. Did you ever at any time ever take more than three cases of Vigo on that truck to deliver at Wekiwa and him pick it up? A. No sir.

"Q. Did you ever take more than three? A. No sir, I did not.

"Q. Well, why was that? A. Well, for the simple reason, I spoke about getting more than three cases, but Wilson told me that he would not put any Vigo in the back of his car and he could only get three cases in his turtleback, so that is why I did not go over three cases at any one time."

Witness then testified to the sale of part of the dog food by himself and State's witness Revels. On cross-examination he said that he would estimate that he took dog food from his employer sixteen or seventeen times, two or three cases at a time.

Defendant Wilson testified that he was a brother-in-law of Randolph Johnson and only loaded one case of dog food on Johnson's truck and that was on April 2, 1956; that he lived in Tulsa and Johnson got him to promise to meet him at the dump grounds at noon on April 2, and many times thereafter and he would haul two to three cases of dog food and store them on an enclosed porch of his home in Tulsa. Defendant said that he could get but two or three cases in the turtleback of his car at one time, and that he would not agree to, and never did, have dog food in the seat of his car.

Defendants introduced evidence to show previous good character.

The State offered no evidence in rebuttal.

From the evidence recited, we have seen that there was no testimony to corroborate the statement of the accomplice, Revels, who testified for the State and said that on April 2, 1956 he saw the defendants load ten cases of dog food on the dump truck driven by Randolph Johnson. If there were ten cases loaded, then such fact would support a felony charge, but if only two or three cases were loaded, the evidence would support only a conviction for a misdemeanor.

But by the instruction given by the court, the jury was permitted to find the defendants guilty of a felony, even though they should find that the defendants took only two or three cases of dog food at a time, if the jury should find that the taking was in furtherance of a plan or scheme to take a quantity exceeding in value $20.

The Attorney General in effect has confessed error as to the giving of Instruction No. 6, complained of, in that an Assistant Attorney General has advised this court that he could not defend the instruction, and has not filed a brief.

Counsel for the defendants call our attention to the case of Camp v. State, 7 Okl.Cr. 531, 124 P. 331, a case where the

evidence developed that some merchandise was missing from a store and there was no evidence as to the value of the goods taken at any one time and that the items were taken at a half dozen times. The evidence failed to show that the value of the property taken at any one time exceeded $20. It was there held:

"Where property was taken on a number of different occasions, each separate taking constituted a separate and distinct offense, and a person cannot be convicted of grand larceny upon proof that the value of the entire property taken on such different occasions exceeded $20 in value."

In Hoffman v. State, 24 Okl.Cr. 236, 218 P. 176, a clerk in charge of merchandise took different articles from stock at different times and secreted them within the store, and finally removed them at one time. The total value was shown to have exceeded $20. The appropriation was considered one transaction. Thus the case differs from the within case, where there were not only many takings, but a corresponding number of removals from the premises of the victim.

It is our conclusion that the giving of Instruction No. 6 constituted error, because it permitted the defendant to be convicted of the felony charged, even though the jury may not have believed that defendants took as many as ten cases, or merchandise of value of $20 at the taking on April 2, 1956.

But for the testimony of Revels that he saw defendants load as many as ten cases on the dump truck on April 2, 1956, which would exceed in value $20, we would affirm for the included misdemeanor offense in view of the record in this case. But we are compelled by the foregoing to, and do reverse the case, with directions to grant the defendants a new trial consistent with what has been said.

BRETT, P. J., and NIX, J., concur.