The German Insurance Company v. Mrs.
J. H. Allen.

No. 13,762.   (77 Pac. 529.)

SYLLABUS BY THE COURT.

1. Insurance Policy—*"Iron-safe Clause" Waived by Agent.*
A provision in a fire-insurance policy that a merchant will keep
books showing the purchase and sale of goods for cash, credit, and
exchange, and produce the same with the last inventory, in case
of a loss, may be waived; and when an agent who issued a policy
was informed, after the contract was made, of the system of book-
keeping used by the insured, which did not include a cash-book,
and then stated that the system was all right and would be satis-
factory, the insurance company cannot, after a loss, defend on the
ground that a cash-book was not kept; the requirement will be
deemed to have been waived.

2. ———— *Right of Forfeiture Waived by Adjuster.* Where the
adjuster of a fire-insurance company, after a loss, learns of the
non-compliance by the insured with a provision of the policy with
regard to keeping books, and, instead of declaring a forfeiture
therefor, negotiates with the insured for the making of other and
better proofs, extends the time to make proofs, and requires the
insured, at some trouble and expense, to submit to an examina-
tion under oath concerning the fire and the property destroyed,
the company will be deemed to have waived the right of forfeiture.

Error from Coffey district court; Dennis Madden,
judge.   Opinion filed July 7, 1904.   Affirmed.

*Barnett & Barnett,* and *Joe Rolston,* for plaintiff in
error.

*W. W. Brown,* and *Kellogg & Madden,* for defendant
in error.

The opinion of the court was delivered by

Johnston, C. J.: This was an action brought by
Mrs. J. H. Allen against the German Insurance Com-
pany, of Freeport, Ill., upon a contract insuring a
store-building and a stock of merchandise therein

against loss or damage by fire. The policy of insurance was issued on September 7, 1901, and the building and stock of goods were wholly destroyed by fire on September 24, 1901. Payment of the loss was refused by the insurance company because of alleged non-performance of the conditions of the policy by the insured. The contract contained what is commonly spoken of as the "iron-safe clause," by which the insured agreed to keep a set of books showing a record of the business transacted, including all purchases and sales, for credit, cash, and exchange, as well as the last inventory of the stock taken within twelve months prior to the happening of the loss, and to keep books and inventory securely locked in a fire-proof safe at night and when the store was not actually open for business; and, also, the further provision that such books and inventory would be produced in case of any loss, and in the event of a failure to produce the same the policy should be deemed to be null and void. On the part of the company it was contended that the insured had failed to keep the books showing her cash sales, or to produce any such books after the loss occurred. The insured contended that she had substantially performed the conditions and requirements of the policy, and that if she had failed to any extent it had been waived by the company and its agents. Among other questions that of waiver was submitted to the jury and their finding was in favor of the insured. She was awarded $2400, the full amount provided for in the policy, and also an attorney's fee in the sum of $100.

The stipulation to keep a set of books showing the purchase and sale of goods for cash, credit, and exchange, together with an inventory of the stock of merchandise, and the production of the same in case

of loss, was an important feature of the contract. A set of books was kept by the insured, but it appears that no cash-book, or book showing the sales of goods for cash, was kept, and, of course, none was produced after the loss occurred. Whether the record of the business done by the insured could be fairly determined from the books actually kept, we need not now inquire.

After the contract of insurance had been made the attention of the agent of the company who issued the policy was drawn to the method of bookkeeping; that is, that she kept a day-book, a register, and a ledger—and he said that they were kept right; in effect, he declared that her method of keeping books would be sufficient as well as satisfactory to the company. This condition was intended for the benefit and protection of the insurer, and, like other provisions of the insurance contract, it might be waived by the company. As the agent issued polices and had full power to represent and bind the company, his statement waived defects, if there were any, in the system of bookkeeping. This is not to be regarded, nor was it treated by the court, as a preliminary oral or contemporaneous agreement. If it had been of such character it would have been merged in, and could not be set up to contradict and overthrow, the final written contract. The jury were instructed that the statement of the waiver, to be effective, must have been made after the policy had been issued and delivered to the insured. There was testimony tending to show that it was made after the contract of iusurance had been completed and the policy delivered.

In addition to this waiver, the adjuster, although directly informed that no cash-book had been kept, did not declare a forfeiture, but negotiated with the

insured about making other and better proofs of loss. At the same time, it is true, he declared that the company did not thereby waive any of the conditions of the policy or the rights of the company, but his conduct was hardly consistent with his declarations. Later he actually extended the time for making proof, and, more than that, required the insured, at some trouble and expense, to appear in another town and submit to an examination under oath with respect to the property and the loss. At this time there was an extended inquiry regarding the ownership of the stock of goods, the quantity, quality, and value, the inventory that had been taken, the goods on hand when the fire occurred, the probable origin of the fire, and the conduct of the insured at the time. These negotiations and transactions by the adjuster after learning that no cash-book had been kept amounted to a waiver of the requirement and of forfeiture, if any ground therefor existed. (*Assurance Co. v. Bradford*, 60 Kan. 82, 55 Pac. 335.)

An attorney's fee was allowed, and an attack has been made on the statute under which the allowance was made. Several decisions have been made upholding the validity of the law and the question is no longer open for debate. (*Assurance Co. v. Bradford*, supra; *Insurance Co. v. Corbett*, ante, page 564, 77 Pac. 108.)

The judgment of the district court will be affirmed

All the Justices concurring.