CONNECTICUT FIRE INSURANCE COMPANY *v.* BOYDSTON.

Opinion delivered April 4, 1927.

1. INSURANCE—AUTHORITY OF AGENT TO WAIVE PROVISIONS OF POLICY.—Any condition inserted in a policy for the benefit of the insurer may be waived by it, and an insurance agent authorized to waive a forfeiture may do so orally, though the policy provides that the waiver must be indorsed on the policy.

2. INSURANCE—NONWAIVER AGREEMENT CONSTRUED STRICTLY.—An agreement providing that the insurance company might investigate the cause of fire and the resulting loss without waiving any rights, being written by the insurance company's adjuster, will be construed strictly against the insurer and liberally in favor of the insured.

3. INSURANCE—WAIVER OF FORFEITURE.—Though a nonwaiver agreement stipulated that the insurer might investigate the cause of fire and the resulting loss without waiving any rights, the insurer will be held to have waived the right to a forfeiture for failure of insured to keep his inventory and books in a fire-proof safe by requiring plaintiff to make a trip at his own expense for examination under oath.

4. INSURANCE—CONSTRUCTION OF CONDITIONS.—Conditions written in an insurance policy will be construed strictly against the insurer and liberally against the insured.

5. INSURANCE—CONDITION AS TO EXAMINATION UNDER OATH.—A condition in a fire policy that the insured should submit to examination under oath as often as required, or that the property should be examined as often as deemed necessary, *held* to apply only while the policy was running and not after loss has occurred, and hence such provision did not prevent the insurer from waiving a warranty clause by requiring insured to submit to examination after loss.

6.    INSURANCE—PROOF OF EXTENT OF LOSS.—Any competent evidence which tends to prove the extent or amount of loss for which an insurance company is liable is admissible.

7.    EVIDENCE—SECONDARY EVIDENCE ON PROOF OF LOSS OF BEST.—Where the evidence showed, in an action on fire insurance policies, that the invoices and books showing sales were lost, it was proper to admit secondary evidence to prove the loss.

8.    EVIDENCE—BEST AND SECONDARY EVIDENCE.—Where it was shown that primary evidence of the extent of insurance loss has been burned, secondary evidence of the inventory and cash sales and estimates of other merchants familiar with insured's stock were admissible to prove insured's damages.

Appeal from Poinsett Circuit Court; *G. E. Keck,* Judge; affirmed.

### STATEMENT OF FACTS.

W. H. Boydston instituted separate actions against the Connecticut Fire Insurance Company and the National Union Fire Insurance Company to recover the sum of $1,000 in each case upon a policy of insurance upon a stock of merchandise. The suits were consolidated, and defended on the ground that the insured had forfeited his policies by noncompliance with the conditions thereof.

The policies were introduced in evidence. They are very lengthy, and need not be set out in full. Each policy is for $1,000 upon the stock of merchandise of W. H. Boydston, at Tyronza, in Poinsett County, Arkansas. The policies are practically alike in their terms. Each one contained what is called a "record warranty clause," requiring an inventory to be made at least once a year, and that a set of books be kept showing completely the business transacted since the date of the inventory, and also requiring the inventory and set of books to be securely kept in a fireproof safe at night, when the store was not open for business. The policy also contains the following:

"The insured, as often as required, shall exhibit to any person designated by this company all that remains of any property herein described, and submit to examination under oath by any person named by this company, and subscribe to the same; and, as often as required, shall

produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable place as may be designated by this company or its representative, and shall permit extracts and copies thereof to be made."

The policy also contains a clause that the company shall not be deemed to have waived any conditions of the policy unless by written agreement, or unless there is an indorsement upon the policy of the terms of the waiver.

The storehouse containing the stock of merchandise insured during the life of the policy caught on fire by a fire communicated to it from adjoining buildings, and thereby burned the stock of merchandise. After the fire loss occurred, the adjuster of the companies came to the scene of the fire, and, on the 7th day of May, 1925, made with W. H. Boydston a nonwaiver agreement, which reads as follows:

"It is mutually agreed and understood by and between Boydston Bros., of the first part, and the named-below insurance company of as below, and other companies signing this agreement, parties of the second part, that any action taken by any adjuster or representative of the said parties of the second part in investigating the cause of or investigating or ascertaining the amount of loss and damage to the property of the party of the first part caused by fire alleged to have occurred on April 26, 1925, shall not waive or invalidate any of the conditions of the policies of the parties of the second part, held by the party of the first part, and shall not waive or invalidate any rights whatever of either of the parties to this agreement. The intent of this agreement is to preserve all the rights and defenses of all parties hereto, and to provide for an investigation of and the determination of the amount of the loss or damage only, for the interest of 'whom it may concern,' without regard to the liabilities of the parties of the second part."

Subsequent to this time the adjuster required Boydston to appear before him for the purpose of being examined under oath. W. H. Boydston, at his own

expense, made a trip from Tyronza, in Poinsett County, where he lived and where the loss occurred, to Jonesboro, Arkansas, and there, on the 30th day of June, 1925, submitted to an examination by a representative of the defendant.

At the time of the fire the books and invoices of the plaintiff were not in a fireproof safe. He had been using them during the day, and, being very tired that night, went home, and forgot to put them in the safe. His inventory was at the home of his son, where it was being used in the preparation of his income tax report. Before the non-waiver agreement was executed, the adjuster of the companies had been informed of the facts with regard to the breaking of the Record Warranty Clause. At the trial of the case the plaintiff introduced in evidence duplicate invoices, which he had obtained from the persons from whom he had purchased the goods, and, from the testimony of himself and other merchants who were familiar with his stock of goods and the prices of such goods, he proved the value thereof.

Others facts will be stated or referred to in the opinion.

The jury returned a verdict in each case for the sum of $1,000, and from the judgment rendered each defendant has duly prosecuted an appeal to this court.

*Mardis & Mardis* and *R. Lee Bartels*, for appellant.

*Hawthorne, Hawthorne & Wheatley,* for appellee.

HART, C. J., (after stating the facts). It is the contention of counsel for the plaintiff that the forfeiture of the policy occasioned by the failure of the plaintiff to comply with the record warranty clause was waived when, after the loss by fire occurred, the adjuster, with knowledge that the plaintiff had failed to comply with the conditions of the policy with regard to keeping his books and inventory locked in a fireproof safe when the store was not open for business, required the plaintiff to be put to the trouble and expense of going from Tyronza, in Poinsett County, where the fire occurred, to Jonesboro, in Craighead County, for the purpose of being examined

under oath with regard to the conditions of the policy. It is the settled law of this State that any condition inserted in a policy for the benefit of the insurer may be waived by it, and that an insurance agent authorized to waive a forfeiture in a policy may do so orally, though the policy provides that the waiver must be indorsed on the policy. *German-American Ins. Co.* v. *Humphrey,* 62 Ark. 348, 35 S. W. 428; *Phoenix Ins. Co.* v. *Public Parks Amusement Co.,* 63 Ark. 187, 37 S. W. 959; *Queen of Arkansas Ins. Co.* v. *Forlines,* 94 Ark. 227, 126 S. W. 719; and *Queen of Arkansas Ins. Co.* v. *Malone,* 111 Ark. 229, 163 S. W. 771.

It is also settled by these decisions that an adjuster with the authority of the adjuster in this case may waive the performance of the conditions of the policy. But it is contended by counsel for the defendants that, under the provisions of the non-waiver agreement, there was no waiver of the conditions of the policy in respect to the issue involved in this case. We have set out the non-waiver agreement in our statement of facts, and do not deem it necessary to repeat it here. It specifically states that it was the intention of the parties to provide for an investigation of and a determination of the loss or damage only. By its terms it merely gives the adjuster or any other representative of the company the right to investigate and ascertain the cause of the fire and the loss or damage to the property, without being in any danger of waiving any rights under the policy. The rights of the plaintiff and the defendants were settled by the terms of the policy when the fire occurred and the property was damaged or destroyed by the fire. The parties simply agreed that no waiver of the terms of the policy should be implied from an investigation of the cause of the fire and of the amount of the loss or damage to the property insured. The non-waiver agreement was written by the adjuster of the companies, and its stipulations and agreements, like the provisions of the policy, should be considered strictly against the insurer and liberally in favor of the insured. *Penn. Fire Ins. Co.* v.

*Draper,* 187 Ala. 103, 65 So. 923; *Tinsley* v. *Ætna Ins. Co.,* 199 Mo. App. 693, 205 S. W. 78; *Modlin* v. *Atlantic Fire Ins. Co.,* 151 N. C. 35, 65 S. E. 605; *Beaucamp* v. *Retail Merchants' Assn. M. F. I. Co.,* 38 N. D. 483, 165 N. W. 545; *German Alliance Ins. Co.* v. *Ft. Worth G. & E. Co.* (Tex.), 257 S. W. 273; *Springfield F. & M. Ins. Co.* v. *Fine,* 90 Okla. 101, 216 Pac. 898; *Henderson* v. *Standard F. I. Co.,* 143 Ia. 572, 121 N. W. 714; *Corson* v. *Anchor Mut. F. I. Co.,* 113 Ia. 641, 85 N. W. 806; *McMillan* v. *Ins. Co. of N. A.,* 78 S. C. 433, 58 S. E. 1020; and *German Ins. Co.* v. *Allen,* 69 Kan. 729, 77 Pac. 529.

The non-waiver agreement is, by its terms, limited to investigating the cause of the fire or ascertaining the amount of the loss and damage to the property caused by the fire. It contemplated action on the part of the companies and gave them the full right to make such investigation, through its adjuster or claim agent, or in any other way, it might deem proper. In the present case, however, the plaintiff was required to go from his residence and place of business to another city for the purpose of being examined under oath. He was thereby put to trouble and expense which, under the authorities we have cited above and many others which might be cited, show that the company waived the conditions of the policy with regard to the record warranty clause. If the insurance companies wished to avoid a waiver or forfeiture of the policy because the insured had not complied with the record warranty clause, they should not have required him to be put to the trouble and expense of going to Jonesboro for examination under oath. They knew all the facts with regard to the non-compliance to the record warranty clause that they could know from an examination under oath. In other words, they knew, before they required the plaintiff to go to Jonesboro for examination under oath, that he had not complied with the record warranty clause and that they had a right, under the terms of the policy, to forfeit it for that reason. The plaintiff had a right to assume that they had waived any forfeiture on this ground, and that he was required

to go to Jonesboro to be examined as to the cause of the fire and the amount of loss sustained by him. The undisputed evidence shows that the fire did not originate in the store of the insured and that he did not in any manner, directly or indirectly, aid or have anything to do with starting the fire. It originated from causes with which he had nothing whatever to do. At the trial of the case the plaintiff introduced his inventory and duplicate invoices of goods received since the taking of the inventory. He also produced his bank book, showing the amount of his cash sales, and, in every way possible, attempted to make a correct estimate of the amount and value of the goods destroyed by fire. As we have already seen, he had a right to assume that this was the purpose of requiring him to go to Jonesboro for examination under oath; and, under the terms of the non-waiver agreement, there was nothing to prevent the insurer from waiving any grounds of forfeiture which it knew about before such non-waiver agreement was executed.

Again, it is insisted that the act of the companies in requiring the plaintiff to go to Jonesboro for examination does not waive any ground of forfeiture, because, under the terms of his policy, the plaintiff was required to submit to examination under oath. As we have already seen, these conditions were written in the policy by the insurer, and should be construed liberally in favor of the insured. *Lord* v. *Des Moines F. I. Co.,* 99 Ark. 476, 138 S. W. 1008, and *Great Southern F. I. Co.* v. *Burns,* 118 Ark. 22, 175 S. W. 1161, L. R. A. 1916B, 1252 Ann. Cas. 1917B 497.

Here again we refer to our statement of facts for the exact provisions of this clause of the policy. It is fairly inferable that the parties had in mind an examination of the stock of goods and of the insured himself under oath in order to ascertain whether or not he was over-insuring his stock of goods. This is shown by providing that he should submit to such examination as often as required, or that the property should be examined as often as deemed necessary. If, by this provision, it

had been meant to provide for an examination after the fire, it would have been very easy for the policy to have provided that, in case of loss by fire, the books of the plaintiff should be open to the insured, or that the plaintiff should submit to an examination for the purpose of ascertaining the cause or extent of the loss. Such was the case in *Phoenix Insurance Co. v. Flemming,* 65 Ark. 54, 44 S. W. 465, 39 L. R. A. 789, 67 A. S. R. 900. If the insurance companies wished the policy to contain a provision requiring the insured, as often as demanded, to submit to examination under oath relating to all matters material to the adjustment of the loss, it should have used language which plainly meant that, instead of using language which was susceptible of a construction that it was to apply to the policy while it was running instead of after the loss had accrued.

Counsel for the defendant also seek a reversal of the judgment on the ground that the court erred in the admission of evidence to the jury. It is elementary that any competent evidence is admissible to prove the extent or amount of the loss for which the defendant is liable, which tends to prove that fact. The object of the clause requiring the plaintiff to keep an inventory, including invoices of the goods purchased since his last inventory, and a book containing a record of his sales, was to enable the insurer to have record evidence upon which it might adjust the loss after the fire. The evidence on the part of the plaintiff shows that such a record was kept by him. The invoices and the books showing the sales made were destroyed when the fire occurred. As we have already seen, the fire was communicated to the property from other buildings, and the plaintiff was in no wise at fault in the matter. By inadvertence he had omitted to put his books in the iron safe that night, and they were destroyed when his goods were burned. Proof of these facts was sufficient to let in secondary evidence. *Arkansas Mutual Fire Ins. Co. v. Woolverton,* 82 Ark. 476, 102 S. W. 226. The plaintiff found the last inventory which he had taken at the house of his son, after the

fire. He obtained duplicate copies of the invoices of the goods purchased by him since his last inventory. He obtained from the bank an account of his cash sales. From the testimony of himself and other merchants, who were familiar with his stock of goods and the prices of same, he made as near an estimate as possible of the value of the goods at the time of the fire. This was the best evidence obtainable after it was shown that the record had been burned, and the court properly admitted it to go before the jury to establish the extent of the loss.

We find no reversible error in the record, and the judgment will therefore be affirmed.