## BALTIMORE AMERICAN INS. CO. OF NEW YORK v. PECOS MERCANTILE CO.

### No. 2262.

Circuit Court of Appeals, Tenth Circuit.

July 25, 1941.

Thornton Hardie, of El Paso, Tex. (A. K. Montgomery, of Santa Fe, N. M., and Allen R. Grambling, of El Paso, Tex., on the brief), for appellant.

Caswell S. Neal, of Carlsbad, N. M., for appellee.

Before PHILLIPS and BRATTON, Circuit Judges, and KENNAMER, District Judge.

BRATTON, Circuit Judge.

Pecos Mercantile Company sued the Baltimore American Insurance Company to recover on a policy of fire insurance covering a stock of merchandise, and furniture and fixtures at Carlsbad, New Mexico. Plaintiff prevailed and defendant appealed.

■■ Error is assigned upon the denial of the application of the defendant for a continuance of the case, or in the alternative for a postponement of the trial for at least two weeks. The application was based upon inadequacy of time and opportunity for the attorneys representing the defendant to prepare the case for trial. The defendant was represented by two firms of attorneys of widely recognized ability, one in Texas, and the other in New Mexico. The fire occurred on April 29, 1940; the suit was instituted on August 16; and the answer was filed on September 5. On September 17 the case was set for trial on October 9; on September 18 the setting was vacated; and on October 3, after a hearing at which both parties were represented, the case was set for trial on October 15. The application was filed on the day the case came on for trial. It detailed facts which tended to show that, due to professional engagements and other circumstances which need not be enumerated, the attorneys in Texas had been afforded very little time and opportunity for preparation; and it also set out that a certain member of that firm had intended to prepare the case and be present at the trial but was unable to do so. However, a few days before the trial another member of the firm assumed the responsibility, attended the trial, and participated actively in it. The application also set out that, due to the intention of the member of the firm in Texas to make the preparation and attend the trial, the attorneys in New Mexico had not familiarized themselves with the issues involved and had not taken any action in respect to preparation for trial. Otherwise, no attempt was made to show that the attorneys in New Mexico did not have adequate time and opportunity to make all necessary preparation. An application for a continuance or postponement is addressed to the sound judicial discretion of the trial court, and the action taken thereon is not ground for reversal unless that discretion is abused. Sanders v. Hall, 10 Cir., 74 F.2d 399, certiorari denied, 295 U.S. 739, 55 S.Ct. 653, 79 L.Ed. 1686; Southern Kansas Stage Lines v. Gibson, 10 Cir., 87 F.2d 23; George v. Wiseman, 10 Cir., 98 F.2d 923. A defendant represented by two competent firms of attorneys cannot depend exclusively upon one of them to make all the necessary preparation for trial and, after a reasonable time has elapsed between the institution of the suit and the date of the trial, be heard to complain at the denial of an application for continuance based solely upon the ground that such firm did not have sufficient time and opportunity for that purpose. There was no abuse of discretion in the denial of the application.

■■ Complaint is made that the court declined to exclude the witnesses from the court room while not testifying. The court stated that it was not the practice to exclude witnesses, unless some special reason be shown; and inquiry was made whether there was any special reason, to which the defendant replied in general terms that the exclusion of the witnesses was desired. The question of the sequestration of witnesses rests in the sound discretion of the trial court. Latses v. United States, 10 Cir., 45 F.2d 949; Reger v. United States, 10 Cir., 46 F.2d 38; Hood v. United States, 8 Cir., 23 F.2d 472, certiorari denied, 277 U.S. 588, 48 S.Ct. 436, 72 L.Ed. 1002; Tinkoff v. United States, 7 Cir., 86 F.2d 868, certiorari denied, 301 U.S. 689, 57 S.Ct. 795, 81 L.Ed. 1346. No abuse of discretion is shown here.

The testimony of S. A. Taylor concerning the value of the fixtures in the dry goods department is challenged on the ground of being hearsay. Taylor testified that with

one or two minor exceptions the fixtures in that department were purchased from the Weber Showcase Company of Los Angeles, California, in 1929; that he first became connected with the plaintiff in 1932; that he became its president in 1936, and had continued in that relationship ever since; that the company had an inventory of the furniture and fixtures; that it was completely destroyed by the fire; that he received from Weber Showcase Company duplicate invoices and other information concerning the fixtures purchased from it for the dry goods department, and information from Burroughs Adding Machine Company in respect to the replacement value of certain bookkeeping and adding machines; and that after such invoices and information had been received, a complete inventory was made including prices. The invoices were not introduced in evidence; but by reference to the inventory, Taylor testified in detail concerning the fixtures in the three departments of the store, dry goods, grocery, and market, also the equipment in the beauty shop and the furniture in the office. His testimony covered the items constituting the fixtures, the equipment, and the furniture, and their respective values. He testified that the total cost was $32,425.90; that the replacement cost would have been $30,000; that in submitting the proof of loss he took a depreciation of 44.7 per cent; and that, excluding certain personal property in the building but not owned by the company concerning which there is no controversy as to value, the furniture and fixtures were included in the proof of loss at $14,233.73. At the time Taylor acquired an interest in the business, all furniture and fixtures were carried on the books at a value of $31,526.64. On January 31, 1934, they were given a depreciated value of $14,533.23, and thereafter annual reductions of five per cent or more were made for depreciation. Some fixtures in the other departments were subsequently acquired from time to time. The entire furniture and fixtures appeared on the books of the company as of January 31, 1940, at a value of $14,233.73. The policy required the company to make monthly reports of the value of the property in the store. The reports for several months preceding the fire showed the inventory on hand, and they included the furniture and fixtures at the value shown on the books of the company. Taylor owned all of the capital stock of the corporation and, therefore, was the beneficial owner of the merchandise, fix-

tures, and equipment. He was president of the corporation, was active in the business, and was thoroughly familiar with it. He had personal knowledge of the fixtures, including their kind, utility, adaptability and condition. He testified in response to direct questions that he based his testimony as to cost and replacement values solely upon the duplicate invoices and information furnished him. But it is fairly apparent from his testimony as a whole that he took into consideration his ownership of the property, his active connection with the business, and his personal knowledge of the fixtures in respect to kind, utility and condition.

Of course, it is the general rule that hearsay evidence is inadmissible. The rule applies to both oral testimony and writings. Union Pacific Railroad Co. v. Perrine, 8 Cir., 267 F. 657. And oral testimony based exclusively upon writings which themselves come within the hearsay rule is not competent. Burn & Crump v. Metropolitan Lumber Co., 94 Conn. 1, 107 A. 609; G. A. Boeckling Co. v. Schwer, 122 Ohio St. 40, 170 N.E. 648; Lusardi v. Prukop, 116 Cal.App. 506, 2 P.2d 870; Taylor v. McLennan County, Tex.Civ.App., 120 S.W.2d 134. Moreover, one is required to produce the best evidence available, but where original invoices, inventories, books or other records have been destroyed by fire, resort may be had in a suit of this kind to duplicates, bank records, or other like evidence which is the best available. Cf. Connecticut Fire Insurance Co. v. Union Mercantile Co., 161 Ky. 718, 171 S.W. 407; Connecticut Fire Insurance Co. v. Boydston, 173 Ark. 437, 293 S.W. 730.

Testimony in respect of the market value of personal property is admissible when based upon recognized current catalogues or price lists, Cliquot's Champagne, 3 Wall. 114, 18 L.Ed. 116; Morris v. Columbian Iron Works & Dry Dock Co., 76 Md. 354, 25 A. 417, 17 L.R.A. 851; Mutual Fire Insurance Co. v. Owen, 148 Md. 257, 129 A. 214; American Bonding Company v. Regents of University of Idaho, 11 Idaho 163, 81 P. 604; Hoffman v. State, 24 Okl.Cr. 236, 218 P. 176; American Eagle Fire Insurance Co. v. Lively, 142 Okl. 246, 286 P. 797; upon current market quotations contained in standard publications, Schroeder v. State, 210 Wis. 366, 244 N.W. 599, 250 N.W. 185, 87 A.L.R. 496, certiorari denied, 289 U.S. 757, 53 S.Ct. 794, 77 L.Ed. 1501; upon information obtained from

others with knowledge and experience, Betts v. Southern California Fruit Exchange, 144 Cal. 402, 77 P. 993; Gallagher v. Kelliher, 58 Or. 557, 114 P. 943, 115 P. 596; and upon information secured from the company from which it was purchased, Hartford Fire Insurance Co. v. Baker, 127 Okl. 166, 260 P. 6, 55 A.L.R. 796. In addition, it is well settled that an owner who is familiar with property occupied by him or connected with and used in a business may testify concerning its value, although he is not an expert, Gorman v. Park & Tilford, 2 Cir., 100 F. 553; Union Pacific Railroad Co. v. Lucas, 8 Cir., 136 F. 374; Barrett v. Fournial, 2 Cir., 21 F.2d 298; Thomason v. Capital Insurance Co., 92 Iowa 72, 61 N.W. 843; Jensen v. Palatine Insurance Co., 81 Neb. 523, 116 N.W. 286; Bolte & Jansen v. Equitable Fire Association, 23 S.D. 240, 121 N.W. 773; Farley v. Spring Garden Insurance Co., 148 Wis. 622, 134 N.W. 1054. And his estimates of value may be given either item by item or in gross amounts. Chicago & Erie Railroad Co. v. Ohio City Lumber Co., 6 Cir., 214 F. 751.

■ The testimony in question was admissible. Its weight was for the jury. What has been said applies to the contention in respect to the testimony relating to the bookkeeping and adding machines. There is no need for repetitious discussion.

■ Taylor further testified that the freight which the company paid on the fixtures purchased from the Weber Showcase Company amounted to $901.45, and that testimony is also attacked on the ground that it was hearsay. He explained that he got the weight, got the rate from the local agent of the railroad company at Carlsbad, and then made the calculation. The record is not entirely clear as to the source from which he obtained the weight but it is assumed that it came from the duplicate invoices. Still, the original vendor of the fixtures furnished such invoices to the original vendee, they were represented as duplicates, they purported to be such, and there was no fact or circumstances indicating otherwise. And the testimony was not open to objection merely because information obtained from the local agent of the railroad company respecting the freight rate between two pertinent points was used as a mathematical factor in making the calculation. It was not necessary that the agent or some expert be called as a witness merely to prove the established rate, especially when it was a question of the most incidental kind—not a controverted issue in the case.

■ The testimony of Taylor in respect to two weighing machines is likewise questioned. The witness testified that his information concerning them was obtained from a recent telegram. But plaintiff expressly withdrew that item. Accordingly, defendant suffered no prejudice in the admission of the testimony.

■ By amended answer filed on the eve of the trial, the defendant pleaded for the first time that Taylor was the beneficial owner of substantially all of the capital stock of the corporation, and that he intentionally caused the fire. The refusal of the court to submit the issue of arson to the jury is questioned. The burden rested on the defendant to establish the defense, but it could be proved by direct or circumstantial evidence. No direct evidence was offered as to the origin of the fire. The defendant relied exclusively on circumstantial evidence. Evidence was adduced which the jury had the right to credit tending to establish these facts. The store was located on the corner of a block on the main street of the town. The fire occurred about ten o'clock at night. Ordinarily dozens of people were walking up and down the street all the time at that hour of the evening. The policy was for $62,000; the monthly inventories of the stock of merchandise and furniture and fixtures furnished the company for the months preceding the fire previously referred to show a value in excess of $40,000; the company owed about $38,000; and it made a profit in 1936, 1937 and 1938, while it suffered a loss in 1939, but there was no proof that the creditors were unduly insistent or that any extraordinary financial difficulties were threatened or anticipated. There were two keys to the front door of the dry goods department. The manager of that department usually carried one and the secretary of the company the other. Taylor expected two men to come for the purpose of looking at a store owned by the company in Artesia with a view of buying it. On Saturday, about ten days before the fire, he asked the secretary to give him her key in order that he could get into the store Sunday and obtain certain data if the men came; and he had not returned the key at the time of the fire. A well driller saw Taylor playing pool. Soon afterwards, and about thirty minutes before the fire, while sitting in an

automobile parked at the curb in front of a drug store, he saw Taylor come from the poolroom. When Taylor got about even with the car he looked north and turned as though to go in that direction. But the witness did not know whether he went into the drug store or what became of him. The testimony failed to indicate that Taylor went to the store. The manager of a theatre located across the street from the store, while standing in front of the theatre about five or ten minutes before the sound of the fire alarm, saw someone standing in front of the front door of the dry goods department, just as if he was going into the building or had come out of it. A light was on in the store. The man had his back to the witness. The witness just glanced across the street, did not pay much attention, and went on about his business. At the time he thought in a casual way that it was Taylor but did not give it any particular thought. However, he testified positively that he did not know who it was, and he emphatically declined to say that it was Taylor. The manager of the dry goods department locked the front door at the close of business, about 5:30 o'clock in the afternoon. The night patrolman examined all of the doors of the dry goods department at between 8 and 8:30 o'clock and found them locked. Immediately before the fire, one Hill hastily approached the chief of police and told him to hurry to the store, that someone was burglarizing it and had just knocked out the glass. The officer rushed to the store. The fire alarm sounded just as he arrived. He found the front door of the dry goods department closed but unlocked. The glass in the front windows was out. It had the appearance of being blown out, some of it was across the street. Heavy smoke was rolling up. The officer did not hear any report of an explosion. No explosive or inflammable substances were kept in the building. The electric wiring connected with the water heater in the beauty shop seemed worn, it gave trouble on several occasions, it seemed serious, the celotex ceiling was burned black, and an electrician replaced the wiring. The water heater was automatic but went out frequently. There was so much gas that the air sometimes became bad and it was necessary to get the gas out.

Taylor detailed his whereabouts from the time the store closed until the fire. He testified that at the time the fire alarm sounded, he was bowling with one Hall, that he had nothing to do with causing the fire, and that he did not know how it started. The vice president of a bank in El Paso, Texas, wrote Taylor in March advising that a customer was interested in buying the store. Taylor called on the banker later. The banker testified that Taylor stated in the course of their conversation that the furniture was listed at $9,706.05, that he was willing to take fifty per cent of that amount, and that exclusive of the groceries he would sell the merchandise on hand January 31, 1940, for seventy-five cents on the dollar and the merchandise purchased since that date for ninety cents on the dollar. Taylor denied that he made such statements or offer. He testified that he merely outlined certain offers which had been made to him, but made no offer whatever to the banker.

■ We do not stop to analyze the evidence further or to review the bases for speculation which it suggests. It suffices to say that viewed in the light most favorable to the defendant the evidence and the inferences fairly to be drawn from it placed the cause of the fire well in the realm of speculation and conjecture. But speculation and conjecture were not enough. It was requisite that the evidence point with a fair preponderance to an incendiary origin of the fire, for which Taylor was responsible. The evidence adduced fell short of meeting that requirement. It follows that the court correctly declined to submit the issue to the jury.

■ The remaining contention is that the verdict was excessive. The contention is based upon the testimony of the vice president of the bank previously adverted to concerning statements made by Taylor. But that testimony did not stand without contradiction. The countervailing testimony of Taylor formed an issue for the jury, and the jury seemingly resolved it against the defendant. There was substantial evidence to support the verdict in respect of amount.

The judgment is affirmed.