No. 36,221

SAM MARETT, *Appellant*, v. THE WORLD FIRE & MARINE INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, *Appellee*.

(160 P. 2d 664)

Opinion filed July 7, 1945.

*Austin M. Cowan,* of Wichita, argued the cause, and *John Madden, Jr., W. A. Kahrs* and *Robert H. Nelson,* all of Wichita, were on the briefs for the appellant.

*Arnold C. Todd,* of Wichita, argued the cause for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover on a policy of fire insurance, and from an adverse judgment the plaintiff appeals.

In the petition filed June 3, 1941, it was alleged that on July 15, 1938, in consideration of a payment by plaintiff, the defendant made and delivered a policy of insurance, a copy being attached and made part of the petition. It may be said there was to be $3,500 insurance on a building at 2900 South Broadway, Wichita, and $3,500 insurance on furniture, fixtures and personal property, but the instant policy covered only $1,000 of the whole amount; that at the time the policy was issued and thereafter until destroyed, the building and personal property were used and occupied by a supper club; that on October 12, 1938, the entire property was totally destroyed by fire; that the fair and reasonable value of the real and personal property was greater than the amount for which it was insured; that on November 2, 1938, proofs of loss were made and given and plaintiff performed and agreed to perform all requirements of the policy, but the defendant failed to comply with the insurance contract and has not paid plaintiff the sum of $1,000 or any part thereof; that by reason of defendant's refusal, plaintiff had been compelled to employ attorneys to bring the action and they are entitled to the sum of $300 for such services. The prayer was for $1,000 of insurance and for $300 attorneys' fees.

The policy states that it covers $1,000 of its pro rata proportion of the amounts, and that it is "Uniform Standard Kansas." The policy notes $3,500 insurance on the building and $3,500 on the furniture, fixtures and personal property therein. In the policy it is provided, in separate paragraphs, (a) the entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning the insurance or subject thereof, or if the interest of the insured is not truly stated, or in case of any fraud or false swearing by the insured touching any matter relating to the insurance or subject thereof whether before or after a loss; (b) that the policy shall be void if the interest of the insured be other than "unconditional and sole ownership"; (c) that if loss occur insured shall give immediate notice of loss, protect property, furnish inventories, and similar provisions; (d) that the insured, after loss, shall submit to examination under oath by any person named by the company concerning the insurance and the subject

thereof; (e) the company shall not be held to have waived any provision or condition of the policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to appraisal or to any examination provided for in the policy; (f) no action shall be sustainable until after compliance by the insured with all requirements; and (g) that the policy is made and accepted subject to the foregoing stipulations and conditions and to further stipulations and conditions including that no officer, agent or other representative shall have power to waive any provision or condition except as provided in the policy and as to such provisions and conditions no officer, agent or representative shall have such power or be deemed or held to have waived unless waiver be written upon or attached to the policy. If any other provisions need to be noticed they will be mentioned later.

In its answer filed April 27, 1942, defendant admitted execution and delivery of the policy, made appropriate allegations concerning provisions of the policy as to misrepresentations by the insured, or if his interest be not truthfully stated, as to sole and unconditional ownership by the insured, and other provisions; and alleged violation by the insured and that by reason thereof the policy of insurance became null and void. It was further alleged that false proofs of loss were made and that plaintiff had refused examination under oath as provided in the policy until such examination had been ordered by the district court on motion made in this action, and that plaintiff had failed to comply with the terms, provisions and conditions of the policy and by reason thereof was barred from recovery.

Plaintiff's reply filed May 12, 1942, alleged that defendant was estopped to deny liability as it had notice of ownership at the time the policy was issued; that it extended time for examination, received proof of loss, waived forfeiture by retention of premium, acceptance of proofs of loss, negotiated for settlement, causing plaintiff to incur expense after knowledge, and with full knowledge had never given notice of forfeiture until it filed its answer, and by reason thereof it was estopped to deny existing continued validity of the policy.

A jury was waived and trial was by the court, which made findings of fact and conclusions of law, which we summarize:

The record title to the real estate involved was in plaintiff under a quitclaim deed recorded August 7, 1936. The policy was issued July 15, 1938, and the premium paid by plaintiff. W. C. Cohen, the agent who wrote the policy, notified the defendant that the property

was a supper club with a total value of $20,000 on building and contents, and he had agreed to secure coverage of $7,000. The property was totally destroyed by fire on October 12, 1938. Finding 5 is that on October 13, 1938, plaintiff made a sworn statement to one Roy Allison, Deputy State Fire Marshal, concerning the fire. In the course of it he stated:

"The Riverside Supper Club is owned by Max Cohen I am the manager of the same and have been the manager since it opened the first part of May of this year and was the manager of the same at the time of the fire.

. . . . . . . . . . . . .

"My only interest in the River Side Club is a working interest, by that I mean if the Club shows a profit I *receive* a portion of same. in addition to my salary. I do not have any interest of any kind or character in any shape form or manner in the building or in the fixtures in same at the time of the fire."

Finding 6 is that plaintiff permitted other persons to operate the "Riverside Club" which was separate and apart from the supper club. The business of the "Riverside Club" was sale of intoxicating liquors and gambling, and certain property covered by the policy and included in proofs of loss was used by it. Finding 7 is that on November 3, 1938, plaintiff filed with the defendant's adjuster a sworn proof of loss which stated that defendant had insured plaintiff doing business as "Riverside Supper Club," its destruction by fire, that at the time it was used by plaintiff as a supper club and for no other use, and that the interest of plaintiff was unconditional ownership. Other findings are to the effect that on April 9, 1941, plaintiff filed a supplemental proof of loss; also that on December 22, 1938, counsel for defendant wrote and plaintiff received a letter demanding plaintiff's examination under oath and that similar requests were made under dates of March 21, 1941, and July 7, 1941. On July 16, 1941, defendant filed a motion in the present suit, stating that examination under oath had been demanded and plaintiff had refused to submit, and praying for an order. The motion was sustained and examination was had on December 10, 1941. Reference is then made to a Hammond organ which was in the premises at the time of the fire and was covered by a conditional sales contract, title in seller until the purchase price was fully paid. No claim was made for this organ in the proof of loss. Reference is also made to a cash register which was in the premises under a similar sales contract. The fourteenth and fifteenth findings recite:

"14. The only interest the plaintiff, Sam Marett had in the Riverside Club,

or the Riverside Supper Club, was a working interest; if the club showed a profit he received a portion of same in addition to his salary. He did not have any interest of any kind or character in any shape, form or manner, in the buildings, fixtures or personal property therein at the time of the fire.

"15. Defendant made no declaration of forfeiture or claim of forfeiture, until it filed its answer herein on April 27th, 1942."

As matters of law the trial court concluded that plaintiff had no interest in the property covered by the policy; that defendant did not waive the sole and unconditional ownership provision of the policy, and that defendant was entitled to judgment.

Plaintiff then filed his motion that the court strike findings of fact 6 and 14 and make certain requested findings and strike out the conclusions of law and substitute requested ones. He also filed a motion for judgment on the undisputed evidence and all findings of fact except 6 and 14, as well as a motion for a new trial. Although some colloquy between court and counsel occurring on the hearing of these motions is abstracted, the journal entry of judgment shows only that on April 22, 1944, these motions were denied, and on the same date judgment was rendered for defendant. In due time plaintiff perfected his appeal to this court. The parties will be referred to hereafter as Marett and the company.

Marett revamps his specification of errors into nine questions. Not all of them require separate notice, for our decision concerning those noticed renders discussion of others unnecessary.

Marett first contends that he was the owner of the property insured within the meaning of the insurance policy. Both parties direct our attention to many authorities dealing with the meaning of "sole and unconditional ownership" as those words are used in the policy. We do not find it necessary to discuss this phase of the matter. If Marett's testimony be fully believed, and no contrary conclusions be reached from the defendant's testimony, he was at all times the sole and unconditional owner of all property insured, except the Hammond organ and the cash register, under all of the authorities to which our attention has been directed.

The more important question is whether there was competent evidence to sustain the trial court's finding that Marett did not have any interest of any kind in the insured property. The evidence disclosed that shortly after the fire occurred an investigation was had by the State Fire Marshal. When the investigation was held there were present, the fire marshal, his deputy, an adjuster for a concern which did adjusting of losses for the company, and an agent for the Na-

tional Board of Fire Underwriters. At that investigation Marett was examined under oath as provided by statute (G. S. 1935, 31-201 *et seq.*) and his testimony reduced to writing. At the trial of the present action the fire marshal consented to the evidence being disclosed, witnesses testified with respect thereto and Marett's sworn statement at the investigation was received. Quotations from it appear in the trial court's findings above set forth. There was also some evidence that at the same investigation Max Cohen gave testimony tending to support Marett's statement. No particular complaint is made as to competency of the above evidence. On trial the company also offered and the court admitted testimony of one Ripstra, a contractor who installed a part of the equipment in the club and whose testimony tended to show that Max Cohen rather than Marett directed the installation. The company had requested the trial court to find that Cohen was the owner, which it declined to do. Marett now insists that if Cohen was not the owner, the testimony was incompetent and hearsay as to Marett and that his motion to strike the same was erroneously overruled. In effect the argument amounts to this: If the trial court had given full credence to Ripstra's testimony and had found Cohen to be the owner, the evidence would have been competent, otherwise it was not. Competency does not depend upon credibility. Marett cites no authorities in support of the direct contention which is not sustained. On the question of Marett's ownership of the insured property no incompetent evidence was received. There was ample evidence to sustain finding No. 14 quoted above.

The important contention raised in this appeal is whether the company, by its conduct subsequent to the loss, waived its right to say Marett was not the owner of the insured property and at the trial was estopped to raise the question of ownership by Marett and that the policy was forfeited. In the authorities may be found a multitude of cases dealing with the questions of waiver and estoppel under policies of varying terms, and in some of them it will be found there is lack of clear distinction between waiver and estoppel, or that the two are commingled and confused. For present purposes we accept the statement in 29 Am. Jur. (Insurance, § 799) p. 603:

"Technically, a distinction exists between 'waiver' and 'estoppel', and the terms are not convertible, since a waiver is an intentional relinquishment of a known right and is a voluntary act, while the elements of estoppel are the misleading of a party entitled to rely on the acts or statements in question, and a consequent change of position to his detriment."

See, also, 26 C. J. (Fire Insurance, § 351) p. 279.

Bearing in mind these distinctions we take note of the factual situation. The fire occurred October 12, 1938; the fire marshal's investigation was held on October 13, 1938, at which time the company's adjuster was present and knew of Marett's sworn statement he was not the owner; on November 2, 1938, proofs of loss were furnished by Marett and retained by the company; on December 22, 1938, the company demanded examination under oath of Marett; on March 21, 1941, the company again demanded Marett submit to examination under oath; on April 9, 1941, Marett filed a supplemental proof of loss which the company retained; on June 3, 1941, Marett filed action on the policy; on July 7, 1941, the company again demanded examination of Marett; thereafter on order made by the court an examination of Marett under oath was held December 10, 1941, and not until April 27, 1942, when the company answered Marett's petition, did it claim a forfeiture. Although repetition, attention is also directed to the policy provisions more fully set out above, providing for the examination of insured under oath concerning the insurance and subject thereof.

Marett directs our attention to the fact that the company, through its adjuster, had notice of his statement at the fire marshal's examination, as early as October 13, 1938, but without immediately asserting the policy was forfeited and of no effect because of the fact the insured was not the sole and unconditional owner of the property on November 2, 1938, received from Marett and retained proofs of loss, and permitted him to go to the trouble and expense of making supplemental proofs on April 4, 1941, and never asserted a forfeiture until after suit was filed, and contends that the failure of the company to immediately declare forfeiture when it discovered Marett was not the owner was a waiver of its right, and by reason of Marett's trouble and expense in furnishing additional proof, and the delay, the company was estopped, when it finally filed its answer, to assert forfeiture. In substance the company's answer is that the information it received as the result of the fire marshal's examination, was not usable by it by reason of the terms of the statute which prevented its disclosure without consent of the fire marshal (G. S. 1935, 31-206); that under the policy it had the right to examine Marett under oath and made three attempts to do so, which were frustrated by his refusal to appear; that such examination was only held as result of a court order, and it then as-

serted in its answer its nonliability and the grounds thereof; that under the policy it was expressly provided that it was not to be held to have waived any provision of the contract or any forfeiture thereof by calling for such examination and that the policy was made and accepted subject to that condition; that by its acts it had not waived any condition of the policy or its right to declare a forfeiture, nor was there anything done by which it was estopped to assert forfeiture.

Preliminary to any discussion of the contentions of the parties concerning waiver and estoppel, we shall assume, without exposition, that it is the general rule that where an insurer, with knowledge of facts warranting forfeiture, enters into negotiations after loss which recognize continued validity of the policy and induces the insured to incur expense or trouble under belief his loss will be paid, the forfeiture is waived. See 29 Am. Jur. (Insurance, § 872) p. 668, and 26 C. J. (Fire Insurance, § 352) p. 281.

In support of his contention that the company waived its right to declare the policy of no effect and was estopped to declare forfeiture when it filed its answer, Marett directs our attention to *Insurance Co. v. Allen,* 69 Kan. 729, 77 Pac. 529 (Iron Safe Clause case); *Mayse v. Great American Ins. Co.,* 123 Kan. 692, 256 Pac. 1002 (Hail Insurance); *Sedlachek v. Home Ins. Co.,* 141 Kan. 626, 42 P. 2d 557 (Auto Fire); *Insurance Co. v. Weeks,* 45 Kan. 751, 26 Pac. 410 (Fire); and *Insurance Co. v. Knutson,* 67 Kan. 71, 72 Pac. 526, 100 A. S. R. 382 (Fire); in all of which it was held that under the facts the company had waived a right of forfeiture. None of these cases, however, disclose that there was any provision in the policy similar to the one now before us that, "This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for"; and for that reason they will not be noted further.

Marett also directs attention to the leading case of *Titus v. Glens Falls Insurance Company,* 81 N. Y. 410, 8 Abb. N. C. 315, wherein it was said:

"But we are of opinion that the claim of the plaintiff is well founded that the forfeiture caused by the foreclosure proceedings was waived by the defendant. After the fire, and after the defendant had notice of the proceedings, it required the insured to appear before a person appointed by it for that purpose, to be examined under the clause in the policy hereinbefore mentioned, and he was there subjected to a rigorous inquisitorial examination. It had the

right to make such examination only by virtue of the policy. When it required him to be examined, it exercised a right given to it by the policy. It then recognized the validity of the policy, and subjected the insured to trouble and expense, after it knew of the forfeiture now alleged, and it cannot now, therefore, assert its invalidity on account of such forfeiture.

"When there has been a breach of a condition contained in an insurance policy, the insurance company may or may not take advantage of such breach and claim a forfeiture. It may, consulting its own interests, choose to waive the forfeiture, and this it may do by express language to that effect, or by acts from which an intention to waive may be inferred, or from which a waiver follows as a legal result. A waiver cannot be inferred from its mere silence. It is not obliged to do or say any thing to make the forfeiture effectual. It may wait until claim is made under the policy, and then, in denial thereof, or in defense of a suit commenced therefor, allege the forfeiture. But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived; and it is now settled in this court, after some difference of opinion, that such a waiver need not be based upon any new agreement or an estoppel." (Citing cases.) (l. c. 418.)

An examination of that case will disclose nothing about the force and effect of a saving clause of the policy similar to that quoted above.

In *Connecticut Fire Ins. Co. v. Boydston*, 173 Ark. 437, 293 S. W. 730, not cited by either party, the policy contained a provision for examination of the insured under oath and a general provision the company should not be deemed to have waived any conditions of the policy unless by written agreement or by endorsement on the policy. After loss the company required the insured to make a trip for examination under oath. This was held to be a waiver of its right to declare forfeiture, it being held in that case that the clause for examination applied only while the policy was running and not after loss was sustained, and in the course of its opinion the court distinguished its holding from that in *Phoenix Insurance Co. v. Flemming*, 65 Ark. 54, 44 S. W. 465, 39 L. R. A. 789, 67 A. S. R. 900, where it had held that forfeiture is not waived by the company's making an examination of the insured's books after knowledge of forfeiture, if the policy provided that in case of loss the company could make such examination without waiving any condition in the policy. The opinion in the Boydston case does not make it clear but apparently there was no saving clause in the policy like that presently involved. But if there was, we would not be able to follow

the reasoning of that case in the case before us. The context of the policy before us is in the order heretofore indicated. One after the other the paragraphs of the policy provide (a) for proofs of loss, (b) for examinations of insured under oath, (c) for appraisers for valuation if the insured and the company could not agree, (d) that the company should not be held to have waived by proceedings to have appraisal or examination, as more fully set forth in other parts of this opinion, followed by other provisions referring to loss, and ending with the clause the policy is made and accepted under those stipulations and conditions. Sound rules of construction of written instruments will not permit us to lift the clause for examination out of the context of the policy and say that the clause pertaining to examinations applies only while the policy is running and not after loss has occurred.

In *American Central Ins. Co. v. Nunn,* 98 Tex. 191, 82 S. W. 497, 68 L. R. A. 83, the policy did contain a nonwaiver clause apparently the same as the one before us and a further clause that the policy was made and accepted subject to the foregoing stipulations and conditions, quite like the one before us. As indicated by the headnote the court held:

"An insurance company did not waive its defense under the 'iron safe clause,' by reason of the failure of insured to keep and produce books, by requiring him to submit to an examination concerning the loss, where the policy provided that he should do so when required and that the insurer should not be held to have waived any condition of the policy thereby." (Syl.)

In the later case of *White v. National-Ben Franklin Ins. Co.,* (Tex. Civ. App.) 1 S. W. 2d 1117, the opinion does not disclose the full terms of the policy, but it was there said:

"The following authorities hold that, where the policy contains the stipulation giving the insurer the right to examine the insured, and providing that such examination shall not constitute a waiver of any defense, the insurer may have to the liability asserted under the policy, such examination cannot be asserted as a waiver of such defense: [citing the Nunn case, *supra,* and other authorities]." (p. 1117.)

In *Hill v. London Assur. Corp.,* 9 N. Y. S. 500, 16 Daly 120, 30 N. Y. St. Rep. 539, the case arose from removal of goods, subsequently destroyed, without obtaining requisite written endorsements on the policy. Apparently the policy contained no nonwaiver clause of the same nature as we are considering but did contain a clause the policy was made and issued under its stipulations and conditions. It was held that the fact the company made investigation and appraisal

did not warrant an inference of waiver. Referring to *Titus v. Glens Falls Insurance Co.*, supra, it was said the doctrine of implied waiver could not be applied where there was an express provision in the policy that the company could make investigation and appraisal without being deemed to have waived any forfeiture.

The policy of insurance involved in *Bishop v. A. Ins. Co.*, 130 N. Y. 488, 29 N. E. 844, contained a nonwaiver clause similar to the present one. A loss occurred, the company was notified, its adjuster called on plaintiff, there was controversy about the appraisal and under a clause of the policy appraisers were selected by instrument in writing. Without going into detail, the appraisers failed to perform and the plaintiff then filed proofs of loss. In a suit which followed the company defended on the ground proofs of loss were not timely served and that it was not precluded from asserting that defense as against claim it had waived proofs of loss. The company's contention was denied, and under the facts it was held estopped by its conduct from enforcing the provision against the party who acted in reliance upon its conduct.

In *Kiernan v. Duchess County Mut. Ins. Co.*, 150 N. Y. 190, 44 N. E. 698, policy provisions similar to those before us were involved. Without reviewing the facts fully, it may be said it was there held that where an appraisal is proper under the policy the mere fact one has been had at the instance of the company has no bearing upon the question of a waiver of forfeiture, the claim being that plaintiff was not the sole and unconditional owner. It was further held, however, that an election by the company to insist upon a forfeiture must be asserted within a reasonable time after acquiring knowledge of the breach.

Many other cases may be found involving the policy provision present in the case at bar, but those cited are illustrative of all of them which have come to our attention. Although it may be said there is some contrariety in the decisions, a good deal of it arises because of application to the particular facts of each case.

Applying the general principles of the decisions to the facts in this case, we note the following: It is true that at the fire marshal's investigation in October, 1938, the company, through its agent, received notice of Marett's sworn statement he was not the owner of the insured property, and that thereafter it received proofs of loss from Marett. Marett first furnished a proof in November, 1938, and the company, under date of December 1, 1938, acknowledged receipt and

made its first demand for examination under oath. It did not at that time assert any forfeiture. At that time it was confronted with this situation: The statute under which the fire marshal's examination was held made it an offense punishable by fine or imprisonment for any person, without consent of the fire marshal, to disclose any testimony given by any witness at such hearing or the substance thereof (G. S. 1935, 31-206). The company, being aware of the policy provision for examination of Marett under oath, sought on three occasions to hold such examinations, and Marett refused, and he did not submit until ordered by the trial court after the present action was filed. The evident purpose of the examinations sought was to obtain verification of the testimony before the fire marshal, which the company was then not privileged to use. The right to have such examination under oath was preserved by the policy, and we think it may not be said that the company's repeated efforts to have such examination constituted any waiver, or if it should be so considered, the nonwaiver clause covered it. As has been shown above in some of the decisions it has been held that a company may waive forfeiture or be estopped to assert it by putting the insured to trouble and expense in complying with provisions for examination under oath, making proofs of loss or other somewhat similar things. We are of opinion that where the policy calls for examination, and it is held or attempted to be held in the city of his residence, it may not be said the insured is put to trouble and expense. Possibly if he attended assured would lose a little time and be inconvenienced, but he knew when he accepted the policy that one of its conditions was that such an examination could be demanded. The fact it was demanded cannot be converted into a waiver, nor used as an element of estoppel. Insofar as proofs of loss are concerned, the evidence is that Marett furnished proof in November, 1938, under circumstances previously set forth. After ignoring demands for examination he asked the company for additional blanks. In sending them to him the company again demanded his examination under oath. Without further statement, we are of opinion that the company's acts may not be separated from Marett's and waiver or estoppel based on proofs of loss. Considering what Marett did, in connection with what the company did, it is quite clear the company never deviated from its demand that Marett submit himself for examination. Marett could not ignore those demands and by furnishing some

proofs not demanded by the company build up a waiver by the company of its right to assert the policy was void, or to create a situation where it could be said the company, by its conduct, was estopped to assert that defense.

Nor have we overlooked the argument presented, and supported by some of the decisions, that the company may not say the policy continues for the purpose of permitting it to assert its defenses, but is forfeited so that plaintiff may not recover under it. That argument will not withstand analysis. The contract itself sets up the grounds under which the forfeiture may be declared. The company asserts nonliability here by reason of policy provisions and not in opposition to them. There is a further argument that forfeiture must be promptly asserted, and that may be conceded. But it can only be asserted effectively when the moving party is in possession of facts and evidence that in event of litigation, he can prove his ground for forfeiture. That situation has already been sufficiently treated. While equity does not favor forfeitures, it displays no kindlier feeling for estoppels. Insofar as waivers are concerned they only come into being when a party, in full possession of the facts, relinquishes a known right.

As applied to the facts in this case we think the trial court properly concluded that the plaintiff Marett had no interest in the property covered by the policy of insurance, and that the defendant company had not waived the ownership provisions of the policy, and its judgment should be affirmed. It is so ordered.

BURCH, J., not participating.