METROPOLITAN LIFE INSURANCE COMPANY
v. ALICE SMITH

CIRCUIT COURT

EIGHTEENTH CIRCUIT
FILE No. CV 18-6305-0990

Memorandum filed February 1, 1965

*Thurston Greene,* of Torrington, for the plaintiff.

*Sully I. Berman,* of Sharon, for the defendant.

PRUYN, J. The plaintiff sues to recover certain alleged overpayments made by it to the defendant under a group medical payments policy of insurance. The essential facts alleged in the amended complaint are admitted by the defendant in her answer thereto, which denies only those allegations necessary to raise the only issue in the case, namely, the interpretation of the policy of insurance. The court has formulated this memorandum of decision in the form of a finding pursuant to § 993 of the Practice Book.

I

The following facts are found:

1. The plaintiff is a corporation, organized and existing under the laws of the state of New York, engaged in the insurance business generally.

2. The defendant at all the times hereinafter set forth was an employee of the General Electric Company at Norfolk, Connecticut.

3. On or about November 1, 1955, the plaintiff insured the employees of General Electric Company against certain medical expenses under its group policy No. 17500-G.

4. The policy, a certified copy of which was filed in court with the complaint as exhibit A, provides that the plaintiff "promises to pay the Benefits, other than Life Insurance, described in the Schedule of Exhibits which are attached hereto as Schedule A of this Policy as such Booklets are applicable to the Employees of General Electric Company."

5. The applicable booklet listed in schedule A is "General Electric Insurance Plan with Comprehensive Medical Expense Benefits Revised October 1960 Form 32A," a copy of which was filed in court with the complaint as exhibit B, applicable to

employees of all units (with certain exceptions not material to this case) who are employed outside California, Rhode Island and New York.

6. This booklet provides for insurance coverage in respect to certain specified medical expenses with certain exceptions.

7. Under the heading "Exclusions" appear the following (pages 21 and 22 of form 32A): "Expenses for the following are not Covered Medical Expenses under the Plan: . . . (k) Expenses to the extent of benefits provided under any employer group plan other than this plan, except for any such employer group plan for which those insured under that plan are required to pay the full premium cost or subscription fee."

8. On or about April 25, 1962, the defendant filed with the plaintiff a claim for medical expenses in connection with her own illness in the sum of $1260.

9. On or about July 31, 1962, the defendant filed with the plaintiff a claim for medical expenses in connection with another illness of hers in the sum of $1157.80.

10. In submitting each of said claims mentioned in findings 8 and 9, the defendant answered "No" to the question: "Are any hospital, surgical, or medical benefits or services for any expenses included in this claim provided under an insurance plan or program whose premium or subscription fee is paid in whole or in part, either directly or indirectly, by another employer?"

11. In reliance on the defendant's answer of "No" to the question set forth in finding 10, the plaintiff paid $1083.93 on account of the defendant's hospital and surgical expenses of $1260 mentioned in finding 8 and $984.13 on account of the defend-

ant's hospital and surgical expenses of $1157.80 mentioned in finding 9.

12. The medical expenses referred to in finding 8 to the extent of $597.50, and the medical expenses referred to in finding 9 to the extent of $415.80, were paid to the defendant's husband, Melton Smith, pursuant to another group plan under which the Prudential Insurance Company insured the employees of Keuffel and Esser and its subsidiary Salisbury Products, Inc., of which the defendant's husband was an employee and for which those insured thereunder were not required to pay the full premium cost or subscription fee.

13. The amounts paid by the plaintiff, the amounts admitted by plaintiff as owing, the amounts paid to the defendant's husband under the Prudential group plan and the amounts claimed by the plaintiff as overpayments are as follows:

| | AMOUNTS PAID | AMOUNTS ADMITTEDLY OWING |
|---|---|---|
| First Count | $1083.93 | $576.05 |
| Second Count | 984.13 | 630.70 |
| | $2068.06 | $1206.75 |

| | AMOUNTS PAID TO HUSBAND UNDER PRUDENTIAL PLAN | AMOUNTS OF OVERPAYMENTS CLAIMED BY PLAINTIFF |
|---|---|---|
| First Count | $597.50 | $507.88 |
| Second Count | 415.80 | 353.43 |
| | $1013.30 | $861.31 |

## II

The following conclusions have been reached:

1. The employer group plan under which the defendant's husband was insured is included within paragraph (k) (quoted in finding 7) of the "Exclusions" contained in the policy of insurance covering the defendant.

The general rules relating to the construction of contracts apply to the construction of insurance policies. A contract is to be construed according to what is fairly to be assumed to be the understanding and intent of the parties as expressed in it. *Bridge-Mile Shoe Corporation* v. *Liggett Drug Co.*, 142 Conn. 313, 318; *Downs* v. *National Casualty Co.*, 146 Conn. 490, 494; *Lyon* v. *Aetna Casualty & Surety Co.*, 140 Conn. 304, 311. If the terms used are ambiguous and susceptible to more than one interpretation, that which is more favorable to the insured must be adopted. *Smedley Co.* v. *Employers Mutual Liability Ins. Co.*, 143 Conn. 510, 513. On the other hand, if the terms are plain and clear, there is then no need to construe the policy, the terms must be given their natural and ordinary meaning, and the policy enforced according to its terms. *Downs* v. *National Casualty Co.*, supra; *Smedley* v. *Employers Mutual Liability Ins. Co.*, supra; *Raffel* v. *Travelers Indemnity Co.*, 141 Conn. 389, 392.

Exclusion (k) excludes "Expenses to the extent of benefits provided under any employer group plan other than this plan," with the one exception of a plan for which the insured pays the full premium or subscription fee. This exception may be disregarded, as it does not apply to the plan insuring the defendant's husband. The defendant argues that the other plan referred to in exclusion (k) must be one which covers the defendant and that the language used is ambiguous, as it does not mention the source of the other plan, and must be construed in favor of the insured. We cannot agree with this argument. The language is clear and unambiguous. Exclusion (k) is couched in extremely broad language; it refers to "any" other employer group plan; there is no limitation except the one heretofore noted. If the plaintiff had intended to exclude a plan such as that of the defendant's hus-

band or limit it to the employees of its insured employer, it naturally, having made one exception, would have explicitly so provided. Examining the policy as a whole, we note that exclusion (f) excludes expenses for which workmen's compensation benefits may be paid, that exclusion (i) excludes expenses for which the individual is not required to make payment, and that exclusion (j) excludes expenses for which payment may be received as the result of legal action or settlement. Thus, it is obvious that the intent of the plaintiff as expressed in its policy is to exclude such expenses as to which other benefits are payable. And this is a natural intent; it is clearly the purpose of this type of insurance to reimburse employees for their medical expenses and not to enable them to make a profit out of being ill by obtaining multiple benefits for the same expenses, thereby encouraging malingering.

The defendant argues that the benefits paid under the group plan covering her husband were not received by her and were not her property but were paid to her husband and were his sole property and that she cannot be held liable for them. The fallacy in this argument is that the policy is silent as to payments; it refers only to "benefits provided under any employer group plan other than this plan." The mere fact that there exists any other employer group plan under which benefits are provided for the defendant's medical expenses is sufficient for the purposes of exclusion (k). See *DiMauro* v. *Aetna Ins. Co.,* 116 Conn. 246, 248.

This is a case of first impression; neither court nor counsel has been able to discover any cases directly in point, except the *DiMauro* case, supra, the principle of which disposes of the case at bar, and an arbitration proceeding entitled *In re Minnesota Mining & Mfg. Co. & Oil, Chemical & Atomic*

*Workers Union, Local 6-75*, 38 Lab. Arb. 245 (Feb. 26, 1962). In this arbitration proceeding, the company plan, modeled after the General Electric plan, excluded "Benefits payable under any plan for which an employer makes payroll deductions or contributions." The husband of a 3M employee was employed elsewhere where the cost of the plan covering him and his dependents was deducted from his pay. After the husband had collected under his plan on account of his wife's illness, the 3M company refused to pay the wife's claim. The arbitrator concluded that the language of the 3M plan in the normal and usual meaning of the words used clearly precluded the payment of benefits by 3M and that the company had not violated its agreement with the union in refusing to pay such benefits.

2. The defendant has received payment of sums to which she is not entitled and has been unjustly enriched.

Although the plaintiff paid, relying on the defendant's statement that there were no benefits provided under any other plan, it does not claim that there was any fraud on the part of the defendant but relies on the principle that it paid under a mistake and that the defendant has been unjustly enriched. "It is not necessary, in order to create an obligation to make restitution or to compensate, that the party unjustly enriched should have been guilty of any tortious or fraudulent act. The question is: Did he, to the detriment of someone else, obtain something of value to which he was not entitled?" *Franks* v. *Lockwood*, 146 Conn. 273, 278. "Our rule as to recovery of money paid under a mistake has long been well-settled. The payor must act under a mistake of his rights and duties, and be free from any moral or legal obligation to make the payment; and the payee must in good conscience have no right to

retain it. When these conditions exist the money may be recovered whether it was paid under a mistake of fact or of law." *Gilpatric* v. *Hartford,* 98 Conn. 471, 480.

The doctrine of unjust enrichment is equitable in nature and is based on the principle that one should not unjustly enrich himself at the expense of another but should make restitution, it being contrary to equity and good conscience for one to retain a benefit to which he was not entitled. *Schleicher* v. *Schleicher,* 120 Conn. 528, 534. Everyone should be obliged to do justice.

3. Judgment shall enter in favor of the plaintiff for the sum of $861.31 together with costs.