STATE of Missouri, ex rel. STATE DE-
PARTMENT OF PUBLIC HEALTH &
WELFARE, DIVISION OF WELFARE,
Respondent,

v.

The HANOVER INSURANCE COMPANY,
a Corporation, Appellant.

No. 53249.

Supreme Court of Missouri,
Division No. 1.

Sept. 9, 1968.

Elmore G. Crowe, Chief Counsel, Curtis J. Quimby, Senior Counsel, Edward D. Summers, Senior Counsel, Jefferson City, for respondent.

Paul G. Koontz, Thomas J. Wheatley, Maurice J. O'Sullivan, Jr., Kemp, Koontz, Clagett & Norquist, Kansas City, Cullen Coil, Jefferson City, for appellant.

HENRY J. WESTHUES, Special Commissioner.

This is an action filed by the State of Missouri at the relation of the State Department of Public Health and Welfare, Division of Welfare, against The Hanover Insurance Company, a corporation, to re-

cover on a bond for funds misappropriated by an employee of the Division of Welfare.

In Count I of the petition plaintiff asked for a judgment of $5,000 and interest on a bond in force from November 13, 1963, to November 12, 1964. The loss sustained was in excess of $5,000, that is, $17,527. The limit of liability under the bond was $5,000.

In the second count, plaintiff asked for a judgment of $10,000 and interest on a bond in force from November 13, 1964, to June 30, 1965. The loss sustained during this period was in excess of $10,000, that is, $10,353. The limit of the bond was $10,000.

Defendant by answer admitted that the losses were as stated in the petition. A caseworker, Mrs. Jeanne Scott, was alleged to have obtained the money through fictitious claims. However, defendant claimed that the total liability on the bonds was limited to $10,000 and offered to pay that sum to plaintiff. Defendant filed a motion for a summary judgment, asking that a judgment be entered in plaintiff's favor for $10,000. Plaintiff also filed a motion for a summary judgment, asking that the judgment be for $15,000 and interest. Plaintiff asked also for damages for vexatious refusal to pay.

The trial court sustained plaintiff's motion for a summary judgment in plaintiff's favor for $15,000 and interest from April 26, 1966.

A motion for a new trial and for modification of the judgment was overruled and defendant appealed to this court. The State is a party, and appellate jurisdiction is vested in this court.

Defendant claims that by virtue of Section 5 of the bond issued on November 13, 1964, its liability was limited to $10,000. Plaintiff claims that Section 5 is not applicable.

The two bonds were identical except that the first bond was for $5,000 and the second was for $10,000. The first was numbered 0–966634 and the second 0–966634A. The first was canceled when the second was issued.

Bond No. 0–966634 (under a caption reading "Table of Limits of Liability") read: "Item 4. Insuring Agreement 4—Faithful Performance Blanket Position Bond Coverage $5,000.00." A provision in bond No. 0–966634A was identical except that the amount stated was $10,000. Under a heading "Insuring Agreements" Item 4 read as follows: "Faithful Performance Blanket Position Bond Coverage. Loss caused to the Insured through the failure of any of the Employees, acting alone or in collusion with others, to perform faithfully his duties or to account properly for all monies and property received by virtue of his position or employment during the Bond Period, the amount of indemnity on each of such Employees being the amount stated in the Table of Limits of Liability applicable to this Insuring Agreement 4."

Section 5, which constitutes the basis of the dispute in this suit, reads as follows under a caption "General Agreement—Loss Under Prior Bond":

"Limit of Liability Under this Bond and any Prior Bond. Section 5. With respect to loss under Insuring Agreement 1 or 3 caused by any Employee or in which such Employee is concerned or implicated or which is chargeable to such Employee as provided in Section 2 of this Bond and with respect to loss under Insuring Agreement 2 or 4 caused by any Employee or which is chargeable to such Employee as provided in Section 2 of this Bond and with respect to loss under any Insuring Agreement which occurs partly during the Bond Period and partly during the period of other bonds issued by the Surety to the Insured or to any predecessor in interest of the Insured and terminated or canceled or allowed to expire and in which the period specified therein for bringing suit, action or proceeding of any kind, or if no such period is specified therein, then within the period prescribed by the applicable stat-

ute of limitations, has not expired at the time such loss thereunder is discovered, the total liability of the Surety under this Bond and under such other bonds shall not exceed, in the aggregate, the amount carried under the applicable Insuring Agreement of this Bond on such loss or the amount available to the Insured under such other bonds, as limited by the terms and conditions thereof, for any such loss if the latter amount be larger."

Defendant claims that Section 5 operated to limit the total liability to an amount which in the aggregate does not exceed the larger amount carried under either of the two bonds. Plaintiff claims that Section 5 is ambiguous and is not applicable.

The parties in their briefs cited a number of cases to sustain their contention. However, the language and wording of the clauses considered in the various cases differ. The language in each case must be considered and the meaning determined under the general principles of law.

■ Respondent cited 44 C.J.S. Insurance, §§ 290, 297, pp. 1139, 1165. We find there the fundamental principles governing the interpretation of insurance clauses. § 290 reads in part as follows: "The courts may resort to construction, in the usual sense, of a contract of insurance only when the language of the contract, in its ordinary meaning, is indefinite, ambiguous, or equivocal; if the language employed is clear and unambiguous there is no occasion for construction or the exercise of a choice of interpretations." And in § 297 a we find the following statement: "A contract or policy of insurance should be given a liberal construction so as to uphold it and accomplish the purpose or object for which it is made, rather than a strict, technical construction which may defeat such purpose or object."

■ When the language in the contract is ambiguous, it is to be construed in favor of the insured. 44 C.J.S. Insurance § 297 c, page 1166.

■ We are of the opinion that the language of Section 5 under the admitted facts simply means that the bond coverage in the bond issued on November 13, 1963, was $5,000. There was a breach of that bond resulting in a loss of $5,000 for which the defendant was liable. The loss was not discovered until after the second bond was issued. However, the time for recovery on the bond had not expired. The second bond was issued and, by Section 5 above set forth, it was provided that if there existed an undiscovered loss under the first bond for which, when discovered, the surety would be liable, the total liability of the surety under this, the second, or $10,000, bond and the first bond *shall not exceed in the aggregate* the amount of this, the second bond, that is, $10,000.

We are of the opinion that the limitation of liability contained in Section 5 is plain and unambiguous and that we are not at liberty to change or modify the contract. 42 C.J.S. Indemnity § 8, pp. 574–576; Henderson v. Massachusetts Bonding & Insurance Co., 337 Mo. 1, 84 S.W.2d 922, 1. c. 924 [1–3]; Massachusetts Bonding & Insurance Co. v. Julius Seidel Lumber Co., 279 F.2d 861, 1. c. 869 [3]. In White Dairy Co. v. St. Paul Fire & Marine Ins. Co., 222 F.Supp. 1014, 1. c. 1016 [2], cited by respondent, the court said: "It must be conceded that a company engaged in issuing fidelity bonds may, by clear and unambiguous language, limit its liability to a single stated amount. This is so whether its obligation is continuing or separate and distinct from year to year."

Respondent stated in its brief that "A proper construction of Section 5 of the bonds makes it applicable to cover losses not involved in this case." We agree that such a question is not involved in this case and is therefore not an issue. Even if that were true it would not alter the plain provisions of Section 5 which we have held to be plain and unambiguous.

■ The final question is whether plaintiff was entitled to interest. Plaintiff says

the tender as made by the defendant was conditional and therefore not such as would preclude interest. We cannot agree. Both parties filed a motion in the trial court for a summary judgment. The allegation of the pleadings as to statements of fact must be considered to be true. The defendant's answer stated the following: "(2) that defendant promptly offered to plaintiff the sum of $10,000.00 which plaintiff refused to accept, and that defendant has at all times been ready to pay said sum of $10,000.00, as plaintiff well knows." If that be true, no interest should have been allowed.

The judgment of the trial court is hereby reversed and the cause remanded with direction to the trial court to enter a new judgment in plaintiff's favor for the sum of $10,000. It is so ordered.

All of the Judges concur.