No. 47,103

BILLEE GIBSON and PHILLIP GIBSON, *Appellants,* v. METROPOLITAN
LIFE INSURANCE COMPANY, *Appellee.*

(518 P. 2d 422)

Opinion filed January 26, 1974.

*Donald W. Vasos,* of Scott, Daily and Vasos, of Kansas City, argued the
cause and was on the brief for the appellants.

*Robert D. Benham,* of McAnany, Van Cleave and Phillips, of Kansas City,
argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an action against an insurer under a group
plan to recover further benefits for medical expense incurred by
plaintiffs. The issue is the applicability of a coordination of benefits
clause contained in the policy. The insurer prevailed and the cer-
tificate holders have appealed.

The entire matter was submitted for determination by the trial
court upon an agreed statement of facts, as follows:

"1. The Metropolitan Life Insurance Company issued its Group Insurance
Policy, No. 20783-G, with an effective date of July 1, 1961, to the American
Optical Company. Generally, the policy provides benefits to eligible employees
of the American Optical Company, and their dependents, for covered medical
expenses incurred.

"2. The group policy issued by the Metropolitan contains a 'Coordination of
Benefits' provision, which provision was added to the policy by amendments
effective October 1, 1967. A copy of this amendment is attached hereto as
Exhibit A. The terms of this provision *was* summarized and explained in the
booklet issued to the covered employees of American Optical Company, the

pertinent portion of which is attached hereto as Exhibit B. Paragraph 3 thereof provides:

"If the . . . dependent is covered under any other plan, the benefits otherwise payable under the group policy as summarized in the certificate are subject to reduction so that for allowable expenses incurred in any claim determination period the benefits payable thereunder together with the benefits available under such other plan or plans will not exceed the total amount of said allowable expenses.

"3. Plaintiff, Phillip Gibson, is an employee of the American Optical Company. Plaintiff, Billee Gibson, is Phillip's spouse, and qualifies as a dependent under the terms of defendant's policy. Plaintiffs have been covered under the group policy since October 8, 1969.

"4. The employee has the option of electing to be covered for personal insurance only or he can elect the personal insurance together with dependent insurance. The employee's combined monthly contributions for the Major Medical Expense Insurance, Maternity Insurance and the Weekly Accident and Health Insurance is:

"Personal Insurance .................................. $3.35 per month
"Personal and Dependent Insurance ................... $8.25 per month

The plaintiff elected both the personal and dependent insurance and contributed $8.25 per month to the premium. The employer pays the difference between the net cost of the plan and the fixed amount paid by the plaintiff. (See Exhibit C)

"5. The plaintiff, Billee Gibson, is employed by the Kansas City, Kansas Community Junior College. The employees of the Community Junior College are covered by a group insurance policy issued by the Continental Casualty Company which provides benefits for medical expenses incurred by the employees. Mrs. Gibson is covered by the Continental Casualty policy. The Continental Casualty Company policy has no coordination of benefits clause, and pays benefits regardless of any other benefits received by the insured.

"6. On June 28, 1971, Mrs. Gibson suffered a back injury, she was hospitalized at Bethany Hospital and was examined and treated by Dr. Richard Gruendel and Dr. Edward Weiford. Expenses in the sum of $1,424.15 were incurred by Mrs. Gibson for the medical treatment rendered to her.

"7. Following her release from treatment Mrs. Gibson submitted a claim for her expenses to the Continental Casualty Company, whose group insurance plan covered the employees of the Community Junior College. The Continental Casualty Company paid on behalf of Mrs. Gibson the sum of $1357.89.

"8. On July 17, 1971, Mrs. Gibson submitted a statement of claim for the $1424.15 in medical expenses incurred by her to defendant Metropolitan. A copy of the Statement of Claim, signed by both Philip C. Gibson and Billee N. Gibson, is attached hereto as Exhibit D.

"9. When the amount paid by Continental Casualty was determined, defendant Metropolitan agreed to pay the unreimbursed medical expenses of Mrs. Gibson, that is, the difference between the amount paid by Continental Casualty and the total medical expenses incurred, to-wit: $66.26.

"10. Defendant did not return or tender back to plaintiffs or American Optical, a pro rata refund of premium prior to the commencement of this action.

"It is agreed by and between the parties that the issue to be decided by the Court is the applicability of the Coordination of Benefits provision of the policy, that is, whether it is a valid and enforceable provision of the policy."

As indicated, the parties have agreed that the coordination of benefits clause, the crux of this lawsuit, is as summarized in paragraph 3 of insurer's booklet, quoted above. It should be mentioned that the word "plan" used therein is defined in the policy amendment (exhibit A) to mean "any plan providing benefits or services for or by reason of medical care or treatment, which benefits or services are provided by (*i*) any group, blanket, or franchise insurance plan, or any other plan covering individuals or members as a group; (*ii*) any group hospital service prepayment plan, group medical service prepayment plan, Group practice, or other group prepayment coverage; (*iii*) any coverage under Governmental programs, or any coverage required or provided by any statute." The amendment further contains rules to be used in establishing the order of benefit determination under the clause, including one as follows:

"(*a*) The benefits of a plan which covers the person on whose expenses claim is based other than as a dependent shall be determined before the benefits of a Plan which covers such person as a dependent."

The statement of claim form signed by plaintiffs and submitted to Metropolitan (exhibit D) reveals plaintiffs indicated there were no other medical benefits provided under any other group insurance plan on account of the accident or illness for which claim was being made against Metropolitan.

In their suit here plaintiffs claim $1,424.15, the full amount of Mrs. Gibson's medical expense.

The trial court's decision was embodied in a letter opinion as follows:

"Defendant's motion for a summary judgment was submitted to the court on an agreed statement of facts and briefs. By stipulation, the only question to be decided is whether the coordination of benefits provision of the policy involved is valid and enforceable. As I view the case, the controlling issue on this question is whether or not the provisions of K. S. A. 40-2203 (*b*) (4) are applicable to the policy, as plaintiff contends it is.

"After consideration, it is my opinion, that the policy involved is a group policy of insurance as defined in K. S. A. 40-2209, and that the provisions of K. S. A. 40-2203 (*B*) (4) are not applicable.

"K. S. A. 40-2208 (5) specifically provides that such provision shall not apply to group policies of sickness and accident insurance. Furthermore, it is obvious that the terms of K. S. A. 40-2203 are applicable only to the type of

policy described in K. S. A. 40-2202 (3), ie: one that purports to insure only one person and his dependents.

"It is, therefore, my opinion that the particular coordination of benefits provision involved in this case is valid and enforceable, and judgment will be entered sustaining the defendant's motion. . . ."

Plaintiffs now appeal from rendition of judgment against them.

Appellants first contend that before appellee can take advantage of the coordination of benefits clause contained in the policy it must first refund, or make tender to them of, a pro rata portion of premiums paid by them, which was never done. Appellants base this contention on certain provisos contained in K. S. A. 1973 Supp. 40-2203 which are:

"40-2203. *Uniform policy provisions; rules and regulations for filing or submission of policies.*

. . . . . . . . . . . . . . .

"(B) *Other provisions:* Except as provided in paragraph (C) of this section, *no such policy delivered or issued for delivery to any person in this state shall contain provisions respecting the matters set forth below unless such provisions are in the words in which the same appear in this section: Provided, however, That the insurer may, at its option, use in lieu of any such provision a corresponding provision of different wording approved by the commissioner of insurance which is not less favorable in any respect to the insured or the beneficiary.* Any such provision contained in the policy shall be preceded individually by the appropriate caption appearing in this subsection or, at the option of the insurer, by such appropriate individual or group captions or subcaptions as the commissioner of insurance may approve.

. . . . . . . . . . . . . .

"(4) A provision as follows: '*Insurance with other insurers:* If there be other valid coverage, not with this insurer, providing benefits for the same loss on a provision of service basis or on an expense incurred basis and of which this insurer has not been given written notice prior to the occurrence or commencement of loss, the only liability under any expense incurred coverage of this policy shall be for such proportion of the loss as the amount which would otherwise have been payable hereunder plus the total of the like amounts under all such valid coverages for the same loss of which this insurer had notice bears to the total like amounts under all valid coverages for such loss, *and for the return of such portion of the premiums paid as shall exceed the pro rata portion for the amount so determined.* . . '" (Our italics.)

Appellants rely on the statutory language italicized. Their position cannot be sustained for several reasons. We need mention but one. That which is now K. S. A. 1973 Supp. 40-2203 forms a part of legislation enacted more than twenty years ago (Laws 1951, Ch. 296), the title of which stated: "An Act relating to insurance, providing for uniform policy provisions in *certain types of insurance*

*policies. . . ."* (Emphasis supplied.) This enactment now appears as article 22, chapter 40, K. S. A., as amended.

K. S. A. 40-2201 defines the term "policy of accident and sickness insurance".

By their own terms K. S. A. 40-2202, 40-2203, 40-2204, 40-2205, 40-2206 and 40-2207, as amended, taken together, apply only to accident and sickness policies issued and delivered to *individuals,* as distinguished from other types of accident and sickness policies mentioned later in the same article. K. S. A. 1973 Supp. 40-2209 defines the form of coverage known as *group* sickness and accident insurance and makes provision for certain clauses to be contained therein. K. S. A. 1973 Supp. 40-2210 defines the form of coverage known as *blanket* sickness and accident insurance and prescribes clauses for that type of insurance, while K. S. A. 40-2211 and 40-2212 are similarly applicable only to policies to assure payment of *workmen's compensation.*

As is evident from the language employed, which we need not set out inasmuch as appellants concede the fact, each of the four types of mentioned forms of insurance is separately dealt with by the legislature in prescribing mandatory policy provisos. Beyond this, however, and as an extra-precautionary legislative measure so far as regulation of *group* accident and sickness policies is concerned, K. S. A. 40-2208 provides:

"40-2208. *Nonapplication to certain policies.* Nothing in this act shall apply to or affect:

. . . . . . . . . . . . . .

"(5) except as to sections 40-2209 and 40-2210 of the General Statutes Supplement of 1955, or any amendments thereto, any blanket or *group* policies of sickness and accident insurance. . . ." (Our emphasis.)

Thus it is clear that nothing in the statute relied upon is in any way applicable to appellants' policy—a group policy. As already indicated they acknowledge 40-2203 is applicable only to individual policies yet at the same time, by reason of the fact they contributed a part of the premium, they attempt to "bootstrap" themselves into it by reason of certain language in our opinion in *Ogden v. Continental Casualty Co.,* 208 Kan. 806, 494 P. 2d 1169. This was an action to recover under a group policy providing disability benefits to employees of a particular employer, premiums for which coverage were paid in equal proportion by the employer and each employee. A certificate evidencing the coverage under the master policy was issued to each employee, including plaintiff, on September 1, 1966.

The policy was modified by an endorsement dated January 1, 1967, which had the effect of reducing the benefits by any amount received as payments under the workmen's compensation act or the social security act. The endorsement reducing the coverage was agreed upon by the insurer and the employer in order to avoid an increase in premium. Allegedly the employer distributed new certificates containing the endorsement of each of its employees but plaintiff testified, and the trial court found as a fact, he had never received notice of change in the benefits provided by his policy. Plaintiff became disabled February 28, 1968, and the lawsuit was precipitated when the insurer claimed credit for its liability by reason of social security payments received by plaintiff. The trial court found plaintiff was entitled to notice of the modification made in his policy before his rights could be affected thereby. This court affirmed, stating, *inter alia*, the following:

"The rationale of the decisions is that where the employee pays a portion of the premiums he has valuable rights in the policy and therefore notice should be given him of any modification of the contract which might affect those rights. The reason for the rule of notice is to enable him to exercise any conversion privilege available under the terms of the policy or, in the absence of such a provision, so that the insured may obtain similar insurance protection on his own account elsewhere." (p. 810.)

However, in *Ogden*, we also had this to say:

"The requirement of notice to the employee of policy modifications in no way abridges the contractual rights of the insurance company or the employer, while at the same time preventing loss to the employee as a result of the unilateral actions of others of which he is not even aware." (p. 810.)

Obviously, the situation in *Ogden* where claimant had no notice of changes substantially reducing the benefits for which he was paying, is quite different from that in the case at bar in which the coordination of benefits clause was in the policy when appellants' certificate was issued to them and they are charged with knowledge of the coverage being furnished. Nothing said or held in *Ogden* aids appellants' cause.

That which appellants really seem to be arguing is that it just isn't fair for their coverage, for which they have contributed premiums, to be so drastically reduced, and appellee should be estopped from denying liability for the full amount of their medical expense. The elements of estoppel (see *Marett v. World Fire & Marine Ins. Co.*, 160 Kan. 125, 160 P. 2d 664) simply do not exist. Appellants

also overlook the fact insurance is a matter of contract and the parties have the right to employ whatever terms they wish, and courts will not rewrite them, so long as those terms do not conflict with pertinent statutes or public policy. Manifestly, in any type of insurance the amount of the premium is correlated with the amount of coverage provided. Lower premium rates have always characterized group insurance contracts as compared to those for individual policies (1 Appleman, Insurance Law and Practice, § 41).

Viewed from the standpoint of public policy we see nothing unjust or wrong in the clause of which appellants complain. The general purpose of the particular coverage is to indemnify the insured for medical expenses resulting from accident and sickness. The precise question is one of first impression with us; however, other courts have dealt with it in the same or analogous situations. Although the language may vary it is not uncommon to find provisos in group policies limiting or reducing the coverage where the loss incurred is payable from other sources as those mentioned in the coordination of benefits clause under consideration here. Generally those provisos are enforced by the courts (see, e. g., *McKay v. Equitable Life Assurance Society of U. S.,* 421 P. 2d 166 [Wyo.]; *Medical-Dental Service, Inc., v. Boroo,* 92 Idaho 328, 442 P. 2d 738; *Metropolitan Life Insurance Company v. Smith,* 3 Conn. Cir. 169, 209 A. 2d 693; *Dina v. Aetna Life Ins. Co.,* 65 Misc. 2d 97, 316 N. Y. S. 2d 654; *Blue Cross v. Ayotte,* 35 A. D. 2d 258, 315 N. Y. S. 2d 998; see, also, anno. 81 ALR 2d 927, 936-937). Reasons mentioned for the results reached include the intent expressed in the policy by such a clause as that under consideration to: Prevent the insured from recovering more than is necessary to make him whole (*Dina*); keep premium rates as low as possible while assuring full compensation to the group policy holder (*Ayotte*); reimburse employees for their medical expenses and not to enable them to make a profit out of being ill by obtaining multiple benefits for the same expenses, thereby encouraging malingering (*Smith*).

No ambiguity in the language of the coordination of benefits clause is asserted by appellants and, indeed, none appears. The clause is applicable to appellants' claim and there is no alternative to enforcing the agreement which they have made. That agreement made Mrs. Gibson's coverage with appellee secondary and subject to benefits received from the group policy with her own employer, thus limiting recovery from appellee to the remainder of her medical

expenses, or the sum of $66.26. The trial court correctly rendered judgment for appellee.

Judgment affirmed.

APPROVED BY THE COURT.