Lawrence A. KYTE, Plaintiff-Respondent,

v.

**FIREMAN'S FUND AMERICAN INSURANCE COMPANIES,**
Defendant-Appellant.

No. 10059.

Missouri Court of Appeals,
Springfield District.

March 28, 1977.

William C. Crawford, Frieze, Crandall & Crawford, Carthage, for plaintiff-respondent.

John R. Martin, Blanchard, Van Fleet, Martin, Robertson & Dermott, Joplin, for defendant-appellant.

PER CURIAM.

Plaintiff Lawrence Kyte sued for benefits allegedly due him under a group disability insurance policy issued by defendant Fireman's Fund. Plaintiff claimed defendant had paid some benefits but wrongfully refused to make further payments due under the policy. Defendant denied liability for additional benefits and counterclaimed

for recovery of monies it alleged were overpaid plaintiff because of his receipt of benefits under another disability policy. The Circuit Court of Jasper County, sitting without a jury, found for plaintiff on his petition and on defendant's counterclaim, and entered judgment for plaintiff. We affirm.

The sole issue on appeal concerns the applicability of Part XV of the Fireman's Fund group policy which covered plaintiff as an employee of Foremost-McKesson, Incorporated. This clause, entitled "Reduction In Indemnity For Other Disability Insurance Benefits," provides as follows:

The amount of any Indemnity or expense payable under this policy shall be reduced by any benefits paid or payable under any other Disability Policies, or any plan, negotiated by or through any employer or sponsoring entity.

It was stipulated that plaintiff became disabled in 1971 and during June of that year began to receive monthly disability benefits under a policy with the Travelers Insurance Company. Defendant contends this policy with Travelers was "negotiated by or through" plaintiff's employer within the meaning of the above-quoted Part XV of his group policy with Fireman's Fund. It claims the benefits received by plaintiff from Travelers must be deducted from the amounts otherwise payable under its own policy.

The case was tried upon a stipulation of facts, documentary evidence, and the brief testimony of plaintiff. Plaintiff was employed by Foremost-McKesson from 1934 until he became disabled on June 30, 1971. In June 1958, Burt Barkus, an independent insurance agent, and Roy Wharton, a field supervisor for the Travelers Insurance Company, advised certain division officers of Foremost-McKesson that Travelers had a "franchise plan" for key employees. The plan would provide supplemental income in case of disability by illness. Under this plan the company employer had to agree to furnish a list of key employees, permit solicitation of employees on company premises, and make payroll deductions for premiums.

If the company agreed to these conditions and at least five employees signed for the plan, it would become effective. After several letters and other communications between plaintiff's employer and representatives of Travelers, the officers of Foremost-McKesson agreed to the plan and the required number of employees applied for policies. Plaintiff Lawrence Kyte executed an application on July 7, 1958, and on October 1, 1958, Travelers issued to him the disability policy under which he began to receive benefits in 1971.

The Travelers "franchise plan" was not group insurance; each policy was individually applied for, and if the application was accepted Travelers issued an individual policy. In the event a policyholder under the plan left the employ of Foremost-McKesson, he could arrange directly with Travelers for a continuation of the policy. The premium costs were borne entirely by the employee policyholders, and the company employer's sole participation was to make payroll deductions for the premiums and forward the total amount to Travelers. In case the employer exercised its reserved right to cancel the payroll deductions, the franchise plan would be terminated.

Fireman's Fund contends that because the "franchise plan" under which plaintiff obtained his disability policy with Travelers required the approval and cooperation of his employer, the Travelers policy was "negotiated by or through" his employer within the meaning of Part XV of the Fireman's Fund group policy. It asserts that without the negotiations between Foremost-McKesson and Travelers plaintiff could not have obtained his disability policy with Travelers.

The principles applicable to the construction of insurance policies are well established. In general, plain and unambiguous language will be given its ordinary meaning and effect. Resort to construction is had only when an ambiguity exists. *Gossett v. Larson,* 457 S.W.2d 709, 712–713 (Mo.1970); *State ex rel. State Department of Public Health and Welfare v. Hanover Insurance Co.,* 431 S.W.2d 141, 143 (Mo. 1968); *Packard Manufacturing Co. v. Indi-*

ana Lumbermens Mutual Insurance Co., 356 Mo. 687, 203 S.W.2d 415, 416 (banc 1947); Bennett v. American Life & Accident Insurance Co., 495 S.W.2d 753, 757 (Mo.App. 1973). An ambiguity exists where the language used is reasonably susceptible of two interpretations. English v. Old American Insurance Co., 426 S.W.2d 33, 36 (Mo.1968); Brugioni v. Maryland Casualty Co., 382 S.W.2d 707, 710–711 (Mo.1964). If the language employed is found to be ambiguous, it will be strictly construed against the insurer and in favor of the insured. This is especially true when the clause in question attempts to limit or exclude coverage under the policy. Aetna Casualty & Surety Co. v. Haas, 422 S.W.2d 316, 321 (Mo.1968); Meyer Jewelry Co. v. General Insurance Co. of America, 422 S.W.2d 617, 623 (Mo.1968).

■ Considering these principles, we believe Part XV of the Fireman's Fund policy, as applied to the facts of this case, is ambiguous and must therefore be construed in favor of the insured. That clause refers to benefits received "under any other Disability Policies, or any plan, negotiated by or through any employer or sponsoring entity." The policy under which plaintiff was covered was negotiated solely between him and Travelers; he completed an individual application and was issued an individual disability policy. Fireman's Fund argues we should not look solely at the individual policy between plaintiff and Travelers but must also consider the overall "franchise plan" agreed to between Travelers and plaintiff's employer and without which the individual policy would not have been executed. We resolve this ambiguity by applying the language of Part XV to the individual policy of insurance between plaintiff and Travelers. It is, after all, the insurance policy itself and not the so-called "franchise plan" which afforded plaintiff coverage and the payment of disability benefits.

An additional reason exists for finding that Part XV of the Fireman's Fund policy does not encompass plaintiff's policy with Travelers. The Fireman's Fund policy was group insurance and the policy and certificate of coverage were so entitled. The reference in Part XV to other disability policies can be interpreted to mean other group policies, especially when the words "negotiated by or through any employer or sponsoring entity" are considered (our emphasis). Reading the policy as a whole [First National Bank of Malden v. Farmers New World Life Insurance Co., 455 S.W.2d 517, 523 (Mo.App.1970); 13 Appleman Insurance Law and Practice § 7383, at 43–45 (1976)], the language is reasonably susceptible to this interpretation. The Travelers policy, being individual and not group insurance, would thus not fall under this reduction of benefits clause.

We recognize that so-called "coordination of benefits clauses" or "antiduplication clauses" in group insurance contracts, requiring that benefits be reduced by payments from other sources, have been upheld when expressed in unambiguous terms and where such clauses clearly applied to the particular facts.[1] In this instance, however, Part XV of the Fireman's Fund group policy does not fall within that category of cases.

The judgment is affirmed.

All concur.

1. The following cases discuss such clauses, although none involve language similar to that used in Part XV of the Fireman's Fund policy: Barker v. Coastal States Life Ins. Co., 138 Ga. App. 164, 225 S.E.2d 924 (1976); Elmer v. Washington Nat'l Ins. Co., 308 So.2d 312 (La. App.1975), cert. denied, 312 So.2d 340 (La. 1975); Steele v. Gen. American Life Ins. Co., 217 Kan. 24, 535 P.2d 948 (1975); Gibson v. Metropolitan Life Ins. Co., 213 Kan. 764, 518 P.2d 422 (1974); Renslow v. Standard Life & Accident Ins. Co., 517 S.W.2d 1 (Tenn.1974); Blue Cross-Blue Shield of Tennessee v. Eddins, 516 S.W.2d 76 (Tenn.1974); Union Labor Life Ins. Co. v. Rudd, 502 S.W.2d 892 (Tex.Civ.App. 1973); Millstead v. Life Ins. Co. of Virginia, 256 S.C. 449, 182 S.E.2d 867 (1971); Dina v. Aetna Life Ins. Co., Hartford, Connecticut, 65 Misc.2d 97, 316 N.Y.S.2d 654 (1970); Blue Cross of Northeastern New York, Inc. v. Ayotte, 35 A.D.2d 258, 315 N.Y.S.2d 998 (1970); McKay v. Equitable Life Assurance Society of the United States, 421 P.2d 166 (Wyo.1966); Metropolitan Life Ins. Co. v. Smith, 3 Conn.Cir. 169, 209 A.2d 693 (1965).