**R.G. FIELDS, Respondent,**

v.

**BARTON COUNTY MUTUAL
INSURANCE COMPANY,
Appellant.**

**No. WD 36787.**

Missouri Court of Appeals,
Western District.

Feb. 11, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied March 27, 1986.

Application to Transfer Denied May 13, 1986.

Patrick M. Reidy, Knipmeyer, McCann, Fish & Smith, Kansas City, for appellant.

H. Kent Desselle, Desselle, White, Allinder & Grate, Independence, for respondent.

Before TURNAGE, P.J., and DIXON and LOWENSTEIN, JJ.

LOWENSTEIN, Judge.

The defendant, Barton County Mutual Insurance Company (Company), operates under Chapter 380 of the Revised Statutes of Missouri 1978, which relates to Mutual Insurance Companies. The Company appeals from an adverse judgment in favor the plaintiff Fields, to whom the Company issued a policy of insurance on a farm house and its contents in June, 1980. On January 24, 1983, fire destroyed the dwelling and personal effects valued at more than the policy limits of $18,000 and $2,000 respectively. The Company denied coverage on the basis of policy language to the effect that the Company was not responsible for a loss occurring to a building which had been vacated or unoccupied for a period exceeding sixty consecutive days. The policy defined a vacated and unoccupied dwelling as one which was no longer in continuous use as a primary residence.

The court, after a bench trial, entered judgment for Fields in the amount of $20,000 and made findings which are undisputed. The court stated an ambiguity existed in the policy language regarding the definition of a vacant and unoccupied dwelling and resolved the ambiguity in favor of Fields. On November 11, 1982, a tenant moved from the house. The court stated "[p]laintiff R.G. Fields physically occupied and resided in the subject property for at least three days in mid December 1982, within sixty days of the fire loss of January 24, 1983." The court also found that "[a]fter the tenants moved in November 1982, plaintiff's caretaker, Fern Cruse inspected the property once or twice a week and plaintiff's sharecropper, Benny Boyer was on the property at least once a week." Although it was not included in the court's findings, the evidence showed Fields was a resident of Colorado Springs, Colorado, during the time in question. The evidence further showed Fields spent three nights in the house between December 14 and December 22 of 1982, even though all utilities to the house were turned off. The parties agree the policy was in effect while the tenant lived in the house. The sole issue on this appeal concerns the time after November 11, 1982.

The portions of the policy in question state:

ALL VACANT AND UNOCCUPIED DWELLINGS. A dwelling shall be considered vacant and unoccupied when it is no longer in continuous use as a *primary residence*. (Emphasis added).

NOTICE—ALL VACANT BUILDINGS REQUIRE A VACANCY PERMIT.

CONDITIONS SUSPENDING OR RESTRICTING INSURANCE. UNLESS OTHERWISE PROVIDED ... THIS COMPANY SHALL NOT BE LIABLE FOR LOSS OCCURRING ... while a described building, whether intended for occupancy by owner or tenant, is *vacant or unoccupied* beyond a *period of sixty consecutive days*. (Emphasis added).

Fields never sought to obtain from the Company a vacancy permit and never told the Company the occupancy status of the house until after he filed the claim.

The trial court found an ambiguity existed between the "sixty consecutive days" clause and the "primary residence" clause. The court apparently construed the policy to mean the Company could avoid coverage only if the house was not vacant or unoccupied beyond a period of sixty consecutive days and, based upon Field's stay in the

house in December, 1982, found for the policyholder.

The first point on appeal is the trial court erroneously applied the law in finding an ambiguity in the policy language. If the policy language is clear and unambiguous, then the Company can deny coverage if it shows the house was vacant and unoccupied as a primary residence over sixty consecutive days, and the insured did not report the vacancy to and receive a vacancy permit from the Company.

In Missouri, if policy language is ambiguous, it will be construed against the insurer. *McRaven v. F-Stop Photo Labs, Inc.,* 660 S.W.2d 459, 461 (Mo.App.1983). This is especially true when the clause in question attempts to exclude coverage. *Kyte v. Fireman's Fund American Insurance Companies,* 549 S.W.2d 366, 368 (Mo.App. 1977). Language is ambiguous if it is reasonably open to different constructions, and language in an insurance policy should be viewed in light of the meaning that would be ordinarily understood by the layman who purchased the policy. *McRaven, supra,* at 461–62; *Kyte, supra,* at 368.

In construing policy language, the policy must be considered as a whole and reasonably interpreted to be consistent with the apparent object and intent of the parties. *McRaven, supra,* at 462. If the language is given its plain meaning and is not ambiguous or subject to two different meanings, the policy must be enforced according to such language. *Briggs v. State Farm Fire and Casualty Co.,* 680 S.W.2d 444, 445 (Mo.App.1984).

The policy here is deemed to be unambiguous. The parties by the insurance contract agreed the house must be the primary residence of the insured or a tenant and must not be vacant or unoccupied beyond sixty consecutive days in order to give full effect to the policy. The evidence was the house was not the primary residence of the insured, and 74 days passed from the time the tenant moved out. Since Fields never obtained a vacancy permit from the Company, the policy as written must be enforced. *Moskowitz v. Equitable Life Assurance Society of the United States,* 544 S.W.2d

13, 20 (Mo. banc 1976); *Briggs, supra,* at 445. The trial court's judgment based on the legal question of ambiguity, was incorrect and is reversed. The disposition of this point makes it unnecessary to consider the Company's other points.

In his brief, Fields contends if this court decides no ambiguity existed and the Company's interpretation of the policy is correct, then the Company waived its "policy defense" by failing to offer to return the unearned premium. This matter will not be considered since there is nothing to show the trial court made a conclusion of law on this point to reach the judgment it rendered. The only reference to this matter in the findings of fact is the statement that the Company "failed to return or offer to return unearned premiums prior to the filing of the action." The conclusions of the court relate only to the ambiguities of policy, which resulted in a favorable judgment to the insured. Since the trial court did not base the judgment on the return of premium issue, this court will not review that point.

The judgment is reversed and remanded to the trial court for the sole purpose of entering judgment for the Company.